Darnell HOOKS, Plaintiff–Appellant,

v.

DIAMOND CRYSTAL SPECIALTY FOODS, INC., a Michigan Corporation doing business in the State of Oklahoma, Defendant–Appellee.

No. 91–6397.

United States Court of Appeals, Tenth Circuit.

June 30, 1993.

Lewis Barber, Jr. (Guinise Marshall with him on the brief) of Barber & Marshall, P.A., Oklahoma City, OK, for plaintiff-appellant.

Clyde H. Jacob, III (Stephen Rose with him on the brief) of Kullman, Inman, Bee, Downing & Banta, P.C., New Orleans, LA, for defendant-appellee.

Before BRORBY, MCWILLIAMS, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

Darnell Hooks appeals the entry of summary judgment on claims of racial discrimination under Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e–2000e–17) and 42 U.S.C. § 1981, fraudulent inducement, and constructive discharge brought against his former employer, Diamond Crystal Specialty Foods, Inc. (Diamond).

## FACTS

The following facts are not in dispute. In 1974, Diamond hired Mr. Hooks, a black man, at its Moore, Oklahoma, facility as a line employee in the production department. Mr. Hooks was promoted in 1979 to the position of converting coordinator, a supervisory position. In 1989–1990, Diamond initiated a company-wide reduction in force by eliminating over thirty positions nationally. As a result, Mr. Hooks' converting coordinator position was abolished in April 1989, but Diamond offered him a new assignment as assistant production supervisor, a position which incorporated many of his previous duties. After accepting the new position, Mr. Hooks received a salary increase of $1500. Meanwhile, the incumbent assistant production supervisor, a white man named Doil Slaymon, was promoted to production supervisor,[1] a position Mr. Hooks desired.

In early 1990, Diamond eliminated Mr. Hooks' new position as assistant production supervisor. Diamond presented three options to Mr. Hooks: accept an hourly, non-supervisory position of press operator; terminate his employment; or accept early retirement. Initially, Mr. Hooks accepted the position of press operator, but he subsequently suffered an on-the-job shoulder injury. After consulting a physician referred by Diamond, Mr. Hooks was released to return to work. Instead, Mr. Hooks decided to

---

1. The position of production supervisor is actually the same as warehouse supervisor and the parties use the terms interchangeably.

accept Diamond's previous offer of early retirement.

Subsequently, Mr. Hooks filed charges with the EEOC on April 2 and July 5, 1990, alleging racial discrimination. After exhausting his administrative remedies and receiving a right-to-sue letter, Mr. Hooks brought suit in the Western District of Oklahoma alleging: 1) racial discrimination under Title VII for failure to promote, demotion, and the elimination of a position; 2) failure to contract on a nondiscriminatory basis in violation of 42 U.S.C. § 1981; 3) fraud in the inducement; 4) constructive discharge; and 5) negligent infliction of emotional harm.[2] The district court granted summary judgment for the defense on all claims. Mr. Hooks appeals the grant of summary judgment on the first four counts. We affirm.

## SUMMARY JUDGMENT

Because we review the district court's granting of summary judgment de novo, we apply the same standard as the district court. *First Interstate Bank of Denver v. Pring*, 969 F.2d 891, 895–96 (10th Cir.1992), *cert. granted in part*, —— U.S. ——, 113 S.Ct. 2127, 124 L.Ed.2d 678 (1993). According to Fed.R.Civ.P. 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Upon reviewing the record for genuine issues of material fact, the appellate court should construe the pleadings and documentary evidence liberally in favor of the party opposing the motion. *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## TITLE VII

a) Failure to Promote

Mr. Hooks alleges Diamond's promotion of Doil Slaymon to production supervisor instead of him was discriminatory. In disposing of Mr. Hooks' Title VII failure to promote claim, the district court relied on *Allen v. Denver Pub. School Bd.*, 928 F.2d 978, 984 (10th Cir.1991), in determining that Mr. Hooks failed to present a prima facie case of racial discrimination.

The Supreme Court has developed a four-part test to determine whether the plaintiff has established a prima facie case of discriminatory failure to promote under Title VII. The plaintiff must show:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)[3]; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1093 n. 6, 67 L.Ed.2d 207 (1981). After the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision which adversely affected the employee. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the defendant meets its burden of production by offering a legitimate rationale in support of its decision, the burden shifts back again to the plaintiff to show that defendant's proffered reasons were a pretext for discrimination. *Id.* at 804–05, 93 S.Ct. at 1825.

---

**2.** Mr. Hooks elected not to appeal the entry of summary judgment on the negligent infliction of emotional harm claim.

**3.** Although the Supreme Court in *McDonnell Douglas* notes that the facts necessary to allege a Title VII prima facie case will vary, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, courts tend to consistently utilize this framework. *See, e.g., Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1093 n. 6; *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260–61 (10th Cir.1988).

Ultimately, the burden of persuasion rests with the plaintiff. *Burdine* 450 U.S. at 253, 101 S.Ct. at 1093. The Tenth Circuit has followed this burden shifting analysis and echoed the elements necessary to establish a prima facie case of discrimination for failure to promote under Title VII. *See, e.g., Notari v. Denver Water Dept.,* 971 F.2d 585, 588 (10th Cir.1992); *Luna v. City & County of Denver,* 948 F.2d 1144, 1147 (10th Cir.1991); *McAlester,* 851 F.2d at 1260–61; *Gutierrez v. Denver Post, Inc.,* 691 F.2d 945, 947 (10th Cir.1982); *Mortensen v. Callaway,* 672 F.2d 822, 823 (10th Cir.1982); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 346–48 (10th Cir.1975).

■ The district court relied on *Allen* in holding the plaintiff failed to present a prima facie case of discriminatory failure to promote. In *Allen,* the court held that in order to establish a prima facie case of discrimination, the plaintiff must show he "was equally or better qualified than those employees actually promoted." *Allen,* 928 F.2d at 984 (citing *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 701 (10th Cir.1984)). Although *Clark* derived this standard from *Burdine* and *McDonnell Douglas,* the Supreme Court never explicitly pronounced such a test. Instead, the Supreme Court in *Burdine* stated:

> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.

*Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. In order to adhere to the standards articulated by the Supreme Court, we believe the best approach is to remain consistent with the prima facie elements laid out in *McDonnell Douglas* and *Burdine,* and followed repeatedly in this circuit. Thus, in order to establish a prima facie case a plaintiff need not show that he or she is equally or better

qualified than the person selected for the position as suggested in *Allen.* Although the court may have to grapple with that factor in determining whether the defendant's reasons are pretextual, requiring the plaintiff to allege such facts at the outset makes the task of establishing a prima facie case unnecessarily difficult. Consequently, the burden shifts to the defendant after the plaintiff has established, along with the other *McDonnell Douglas* elements, that he is qualified for the job, but he need not show that he is equally or better qualified for the job. We caution that *Allen* should not be read to increase the prima facie burden established in *McDonnell Douglas.*

■ We apply the *McDonnell Douglas* criteria to determine whether Mr. Hooks alleged a prima facie case of failure to promote. First, plaintiff is black and therefore a member of a protected class. Second, Mr. Hooks alleges he was indeed qualified for the production supervisor position as he had been with Diamond for fifteen years, ten of which were in a supervisory capacity, and received excellent character of service reviews as a converting coordinator. Third, despite Mr. Hooks' qualifications, he was not assigned the position. Fourth, Diamond promoted Doil Slaymon to the position of production supervisor instead of Mr. Hooks. Doil Slaymon is white and from roughly the same applicant pool as Mr. Hooks. Thus, Mr. Hooks established a prima facie case of Title VII racial discrimination for Diamond's failure to promote and shifted the burden to Diamond to present a legitimate rationale behind its employment decision.

■ In its brief, Diamond relies primarily on the district court's determination that Mr. Hooks did not establish a prima facie case and therefore does not advance a rationale for selecting Mr. Slaymon instead of Mr. Hooks for the warehouse supervisor position.[4] The record, however, is replete with nondiscriminatory reasons justifying Diamond's actions. For instance, when Mr. Slaymon was promoted from assistant pro-

---

4. Although an appellate court should generally avoid extracting a litigant's rationale from the record, we will do so here because the district court applied the wrong standard for a prima facie case, and the parties focused their arguments on the merits of the prima facie determination.

duction supervisor to warehouse supervisor his payroll change voucher stated:

> Doil's previous supervisory experience both here and in the Air Force, combined with his broad product knowledge will be very beneficial in the Warehouse position. Doil's perseverance, determination, [and] resourcefulness will all be pluses as the Warehouse Supervisor. He constantly demonstrates his ability to rise to the challenge to accomplish any job before him.

Moreover, Mr. Slaymon received excellent character of service ratings in ability, performance, conduct, and attendance. We also note that as an assistant production supervisor, Mr. Slaymon performed basically the same tasks as the production (warehouse) supervisor. Consequently, the record illustrates that Diamond's determination that Mr. Slaymon was the more qualified candidate for the position was a legitimate nondiscriminatory rationale for failing to promote Mr. Hooks.

█ In order to survive a motion for summary judgment, it is insufficient for Mr. Hooks merely to establish a prima facie case. *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir.1991). Once "the presumption raised by the prima facie case is rebutted, ... the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. The plaintiff may show discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095. "The court 'must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.'" *MacDonald*, 941 F.2d at 1121–22 (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir.1989)). If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate.

The burden once again shifts back to Mr. Hooks to allege facts which show Diamond's justifications were pretextual.[5] The plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825. For the most part, Mr. Hooks lacks competent evidence and makes conclusory allegations that he was the better candidate for the warehouse supervisor position. The record does indicate that Mr. Hooks received excellent ratings for ability, performance, conduct, and attendance, but simply alleging evidence equating Mr. Hooks and Mr. Slaymon's ratings is insufficient to raise a factual issue as to pretext. Such evidence tends to show only that Mr. Hooks was indeed qualified for the position, but does not indicate Diamond's decision to promote Mr. Slaymon was in any way disingenuous. Companies are often presented with the dilemma of promoting one employee from a group of employees with excellent backgrounds. Discriminatory intent is not necessarily implicated when one of those qualified employees is not chosen.

Additionally, Mr. Hooks asserts he had more seniority than Mr. Slaymon as a supervisor, which is supported by the payroll change vouchers. Mr. Hooks entered his converting coordinator position on April 4, 1979, and Mr. Slaymon achieved his assistant supervisor status on May 11, 1981. Because he possessed greater seniority and supervisory experience, Mr. Hooks believed he was the more qualified candidate, raising the inference that Diamond's justification for promoting Mr. Slaymon was pretextual. We first note that both candidates had roughly the same degree of supervisory experience, eight to ten years. Second, as we previously stated, Mr. Slaymon's experience came as an assistant production supervisor and consequently, he had performed the tasks of the production supervisor, making him the most likely successor for the position. Thus, Mr. Hooks' allegation that Diamond's hiring of Mr. Slaymon was pretextual is not supported by the facts. Because no facts remain in

---

5. We also draw out many of the appellant's argu-

ments relating to pretext from the record.

dispute, the granting of summary judgment is appropriate.[6]

### b) Demotion

The district court determined the demotion claim was not supported by the record, concluding the transfer from converting coordinator to assistant production supervisor was actually a promotion. The court based this determination on an affidavit from the personnel manager and payroll change vouchers which indicated the salary range was actually higher for assistant production supervisor.

The prima facie elements articulated in *McDonnell Douglas* can apply to demotion claims as well. We will apply the same analysis to the demotion claim as other courts have applied to discrimination discharges. In order for an employee to establish a prima facie case of discriminatory discharge or demotion he must show he was: "(1) within the protected ... group; (2) adversely affected by the defendant's employment decision; (3) qualified for the position at issue; and (4) replaced by a person outside the protected group." *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988); *see also MacDonald,* 941 F.2d at 1119; *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991).[7] The troublesome element for Mr. Hooks to demonstrate is that he was "adversely affected by the defendant's employment decision." Simply put, for the plaintiff to have an actionable racial discrimination claim for demotion, he must show that he was demoted.

Demotion has been defined as "a reduction to a lower rank or grade." *See United Aircraft Corp. v. Lodge 971 of Int'l Ass'n of Machinists,* 360 F.2d 150, 151 (5th Cir.1966). Specifically, we hold that a reassignment is not a demotion unless the em-ployee can show that he receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than his previous assignment. *See Singleton v. Jackson Mun. Separate Sch. Dist.,* 419 F.2d 1211, 1218 (5th Cir.) *(vacated in part sub nom. Carter v. West Feliciana Parish Sch. Bd.,* 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382 (1969)). Diamond contends the pay scale for assistant production supervisor was higher than for converting coordinator, and asserts Mr. Hooks' salary increased upon his transfer by $1500. Mr. Hooks does not deny his receipt of the $1500 raise, but contends the increase was attributable to a performance raise earned at his converting coordinator position. Nevertheless, the plaintiff does not allege any facts demonstrating that he received less pay as a result of the transfer.

Additionally, company documents such as a payroll change voucher and bulletin board notice reflect that the transfer was regarded as a promotion. Although Mr. Hooks believes the assistant supervisor position shouldered less responsibility and exercised limited supervisory power, this contention is not supported by the record. It is uncontroverted that both positions were supervisory and ultimately reported to the production manager. Mr. Hooks does not dispute that the duties of the defunct converting coordinator position were assumed by the assistant production supervisor. Thus, the record reflects the assistant production supervisor position required at least as much skill and responsibility as Mr. Hooks' previous position. Viewing the facts in the light most favorable to Mr. Hooks, the nonmoving party, we find Mr. Hooks' change in job assignments cannot be viewed as a demotion, but at most a lateral transfer. Because Mr. Hooks fails to establish that he was adversely affected by Dia-

---

**6.** Diamond also asserts Mr. Hook's Title VII failure-to-promote claim was not the subject of a timely filed EEOC charge as an alternative basis supporting the entry of summary judgment. The failure to promote Mr. Hooks occurred in April 1989, but he did not file a charge of discrimination with the EEOC until April 2, 1990, a delay which exceeds the statutory limit of 180 days. 42 U.S.C. § 2000e–5. In his Response to the Defendant's Motion for Summary Judgment, Mr. Hooks cites *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1544 (10th Cir.1987), contending that Diamond's discriminatory conduct was ongoing and continuing, thereby falling within the statutory limit. We find it unnecessary to determine whether Mr. Hooks' claim was time barred since we have disposed the claim on the merits.

**7.** Although these are ADEA cases, courts apply the same analysis to Title VII. *See Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 n. 1 (10th Cir.1988).

mond's employment decision, an essential element of his Title VII demotion claim, no genuine issue of material fact exists and summary judgment is appropriate. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 (summary judgment is proper if there is "a complete failure of proof concerning an essential element of the ... case").[8]

### c) Elimination of Position

■ In determining whether the 1990 elimination of Mr. Hooks' position of assistant production supervisor was discriminatory in violation of Title VII, we apply the prima facie discriminatory discharge test articulated in *Branson,* 853 F.2d at 770. In cases involving a reduction in work force, courts have modified the fourth prima facie element "by requiring the plaintiff to 'produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Id.* at 771 (citing *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982)). Mr. Hooks easily meets the first three elements: he is black, the elimination of the assistant supervisor position adversely affected him, and he was relieved of his duties as assistant production supervisor despite the adequacy of his performance. The district court determined, however, that Mr. Hooks failed to show a prima facie case as the fourth element was lacking. The court, in applying the appropriate test, determined Mr. Hooks presented no evidence from which a factfinder might reasonably conclude that Diamond intended to discriminate when it decided to eliminate Mr. Hooks' position of assistant production supervisor. *See Branson,* 853 F.2d at 771.

■ The record indicates that Diamond experienced a company-wide reduction in force of thirty-two positions, only two of which were occupied by blacks. On its face the record reveals no evidence of discriminatory intent. Mr. Hooks' efforts to produce evidence implying discriminatory intent are best characterized as conclusory allegations. Among other things, Mr. Hooks contends that he possessed more seniority than two other similarly situated supervisors whose positions were not eliminated, his was the only supervisory position eliminated in the Oklahoma plant, and the three other employees whose positions were eliminated during the reduction in force were released for other reasons. Mr. Hooks also alleges Diamond was aware that the assistant production supervisor position would be eliminated when he was transferred into it. The record is devoid of any evidence in support of these allegations. In order to defeat a motion for summary judgment, the nonmoving party must do more than assert conclusory allegations. *See Metro Oil Co. v. Sun Refining & Marketing Co.,* 936 F.2d 501, 504 (10th Cir. 1991). Because Mr. Hooks failed to allege any concrete facts supported by the record from which a discriminatory intent could be inferred, he did not establish a prima facie case of racial discrimination in the elimination of his assistant production supervisor position. Consequently, the district court properly entered summary judgment on this claim.

### Section 1981

We now address the district court's disposition of Mr. Hooks' § 1981 claim. Initially, it should be noted that Mr. Hooks filed his complaint on December 20, 1990, prior to the enactment of the Civil Rights Act of 1991 amending 42 U.S.C. § 1981. Pub.L. 102–166, Title I, § 101, Nov. 21, 1991, 105 Stat. 1071.[9] In passing the Act, Congress did not specify whether it should be applied retroactively. This circuit has not yet addressed this issue,

---

**8.** Once again, Diamond asserts Mr. Hooks' Title VII demotion claim was not the subject of a timely filed EEOC charge. We find it unnecessary to address this contention since we have disposed the claim on the merits. See fn. 6.

**9.** The 1991 Civil Rights Act overrules the Supreme Court's interpretation of § 1981's term "make and enforce contracts." *Patterson v. Mc-* *Lean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Specifically, § 1981(b) as amended provides, "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

and it is unnecessary to do so here as Mr. Hooks does not argue for the retroactive application of the Act. Thus, we will focus on the language of § 1981 prior to the 1991 Amendments.

 Prior to the Amendments, § 1981 provided that "[a]ll persons ... shall have the same right ... to make and enforce contracts." [10] The Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 181, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989), limited the protections of § 1981 to its enumerated rights, "specifically the right to make and enforce contracts." Because the Supreme Court's narrow interpretation of § 1981 focused on the formation of a contract, claims for demotion, lay off and discharge are not cognizable under § 1981. *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir.1993); *see Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 932–33 (7th Cir.1993). Moreover, it follows that racially motivated transfers designed to get rid of an employee are not actionable under § 1981. *McKnight v. General Motors Corp.*, 908 F.2d 104, 110 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). Because § 1981 as interpreted by *Patterson* does not permit actions for discriminatory demotions or elimination of positions, Mr. Hooks focuses his § 1981 claim on the discriminatory failure to promote.

*Patterson* recognized that a failure-to-promote claim might be cognizable under § 1981. In a literal reading of the statute, the Court explained:

> whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural read-

ing to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a *new and distinct relation* between the employee and the employer is such a claim actionable under § 1981. Cf. *Hishon v. King & Spalding*, 467 U.S. 69[, 104 S.Ct. 2229, 81 L.Ed.2d 59] (1984) (refusal of law firm to accept associate into partnership).

*Patterson*, 491 U.S. at 185–86, 109 S.Ct. at 2377 (emphasis added). The district court took heart in the Supreme Court's admonition not to strain the language of § 1981 in an undue manner, and found the nature of the change in position did not involve the opportunity for Mr. Hooks to enter into a new contract with Diamond.

This circuit has never specifically interpreted the Supreme Court's "new and distinct relation" language in *Patterson*. We take guidance, therefore, from the methodology employed by other circuits and the facts in *Hishon*, the case the Court in *Patterson* used as an illustration of a new and distinct relation. In *Hishon*, a Title VII case, an associate was denied partnership in a law firm. The promotion from associate to partner in a law firm implicates an acquisition of partial ownership, increase in responsibility and compensation, and perhaps personal liability. *See Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir. 1990) (provides in-depth analysis relating to the applicability of *Hishon* to § 1981 claim for failure to promote). Although these factors are helpful in determining whether a new and distinct employment relation was formed, they are by no means exclusive or determinative.

 In fact, courts have not developed a bright-line test in determining whether a "new and distinct relation" exists, but instead have engaged in subtle hairsplitting analyses. *Holt v. Michigan Dept. of Corrections*, 974

---

10. Prior to the 1991 Amendments, 42 U.S.C. § 1981 read in full as follows:

 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and

to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

F.2d 771, 774 (6th Cir.1992), *cert. filed,* 61 USLW 3446 (U.S. Nov. 10, 1992) (No. 92–980). For example, the potential promotion from associate professor to full professor at Rutgers University was not considered a new and distinct contractual relationship. *Bennun v. Rutgers State Univ.,* 941 F.2d 154, 170 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992). On the other hand, a promotion from clerk to supervisor with a consequent increase in pay and responsibility was held to be a new and distinct relation. *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989). Consistently, courts have held that whether a new and distinct contractual relationship was formed should not be measured in quantitative terms, like the amount of potential pay increase, but should instead be determined by whether there exists a meaningful, qualitative change in the contractual relationship. *See Butts v. City of New York Dept. of Housing Preservation & Dev.,* 990 F.2d 1397, 1412 (2d Cir.1993); *Sitgraves v. Allied–Signal, Inc.,* 953 F.2d 570, 573 (9th Cir.1992). "[I]t would be very odd to regard each rung on the career ladder as a different employment relation." *McKnight,* 908 F.2d at 110. Thus, the inquiry should not be confined to titles but should examine actual changes in responsibility and status. *Butts,* 990 F.2d at 1412.

We find the Ninth Circuit analysis in *Sitgraves* both thorough and persuasive. The *Sitgraves* court recognized two situations in which a promotion could be considered a new and distinct relation; the promotion from a non-supervisory position to a supervisory one, and the move from an hourly to a salaried employee. *See Sitgraves,* 953 F.2d at 574. Both of these types of promotions are indicative of a qualitative change in the contractual relationship. Although these situations are not definitive, they are illustrative of the criteria which should be employed in making the new and distinct relation assessment. For example, the transition into a supervisory or salaried position implicates a heightened level of responsibility and increased level of accountability to the company, factors helpful in resolving whether the employment relation has gone through a qualitative change.

Returning to the case at bar, Mr. Hooks complains that Diamond's decision not to promote him to production supervisor was discriminatory. Initially, Mr. Hooks held the position of converting coordinator, a supervisory position in the production department, and subsequent to the elimination of that position, Mr. Hooks was assigned the position of assistant production supervisor. The assistant production supervisor worked under the production supervisor, and performed the same duties as the production supervisor in his absence. According to Mr. Hooks, "the only difference in my job description and the production supervisor's job description, [was that] I was working with less people." Consequently, the potential transition to production supervisor does not involve a qualitative change in the employment relationship. Mr. Hooks already performed a supervisory role, and any increased responsibility he would have received after the promotion is best characterized as a mere advancement in his career path, rather than a new and distinct employment relationship. Thus, the failure to promote Mr. Hooks to warehouse supervisor is not an actionable claim under § 1981 as defined by *Patterson,* and the district court's entry of summary judgment was appropriate.

### FRAUD IN THE INDUCEMENT

The district court held Mr. Hooks failed to submit evidence that would support a finding that the necessary elements for fraud could be established. In order to establish fraud under Oklahoma law, Mr. Hooks must show: "(1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that [Mr. Hooks] would rely on it; and (4) reliance and resulting damage." *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1378 (10th Cir.1989). *See also Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 176–77 (Okla.1988). "If the nonmoving party fails to make a sufficient showing on any essential element of his case, summary judgment is appropriate." *Pytlik,* 887 F.2d at 1378 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552).

Mr. Hooks based his fraud in the inducement claim on his reliance upon Dia-

mond's representations that the assistant supervisor position would not be eliminated. Assuming these representations to be true, Mr. Hooks fails to demonstrate any injury arising from his reliance on Diamond's assurances. At the time of the transfer, Mr. Hooks was given the options of termination, early retirement, or assistant production supervisor. Because he was again presented the options of termination and early retirement after the assistant production supervisor position was eliminated, he has alleged no damages resulting from his acceptance of that position.

Moreover, Mr. Hooks supplies nothing more than unsupported allegations in attempting to show that Diamond had knowledge of an impending elimination of the assistant supervisor position. Consequently, even reading the facts in a light most favorable to Mr. Hooks, he does not allege sufficient facts to meet the second, third, and fourth elements of fraud. Thus, summary judgment was appropriate for the fraud in the inducement claim.

## CONSTRUCTIVE DISCHARGE

Mr. Hooks contends Diamond constructively discharged him from his position as press operator by forcing him to return to full duty status while still suffering from an injury. The district court entered summary judgment, holding Mr. Hooks' constructive discharge claim failed as a matter of law.[11] Thus far, Oklahoma has not recognized constructive discharge as a theory of recovery. *Large v. Acme Eng'g & Mfg. Corp.*, 790 P.2d 1086, 1089 (Okla.1990). We are unwilling to extend Oklahoma law to recognize the theory based on Mr. Hooks' unsubstantiated allegations. Therefore, the district court's entry of summary judgment on the constructive discharge claim was appropriate.

The judgment of the district court is **AFFIRMED.**

---

11. Mr. Hooks never clarified whether he brought his constructive discharge claim under state law or in conjunction with 42 U.S.C. § 1981. Because the district court addressed it as a state claim, and Mr. Hooks appears to argue state law, we will continue to consider it as a state law claim.