**Carl Lee JOHNSON, Plaintiff,**

**v.**

**HOUSING AUTHORITY OF the CITY OF McALESTER, OKLAHOMA, a political subdivision of the State of Oklahoma, Defendant.**

No. 94–656–S.

United States District Court,
E.D. Oklahoma.

May 30, 1995.

---

Timothy R. Haney, Muskogee, OK, Frederick W. Southern, Oklahoma City, OK, for plaintiff.

Charles D. Neal, Jr., Eric D. Janzen, McAlester, OK, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEAY, Chief Judge.

This is an action brought under the authority of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17. Carl Lee Johnson ("Johnson"), a black man, alleges the Housing Authority of the City of McAlester, Oklahoma ("the Housing Authority") engaged in unlawful discrimination when it terminated his employment as a security guard. Johnson claims his termination was racially motivated or, alternatively, in retaliation for his having engaged in protected activities. Johnson also claims his termination amounts to a breach of a 1990 conciliation agreement which resolved his complaints of racially discriminatory conduct.

The Housing Authority has moved the court for the entry of summary judgment in its favor arguing Johnson's termination from employment was the result of a reduction in force occasioned by a lack of funding. For the reasons stated below, the court finds that summary judgment in favor of the Housing Authority is appropriate.

### I.

The Housing Authority, a political subdivision of the State of Oklahoma, was established to provide low rent, government subsidized housing for eligible tenants. The Housing Authority is funded and otherwise financially controlled by the United States Department of Housing and Urban Development ("HUD"). As part of the Housing Authority's yearly operating budget, HUD allocated funds for protective services to assist the Housing Authority in achieving a safer, more attractive housing environment for its tenants. These funds were primarily used to hire security guards to provide various oversight, patrol and monitoring functions for the Housing Authority properties. The security guards had limited law enforcement authority.

Johnson was one of the security guards hired by the Housing Authority. On July 2, 1982, Johnson was hired as a full-time security guard and he remained in that position until his termination from employment on August 31, 1992.[1] During the course of his employment Johnson encountered what he believed to be racially discriminatory treatment affecting his attainment of a promotion to Chief of the Security Department, as well as other employee benefits. In 1990, Johnson filed a charge of racial discrimination against the Housing Authority with the McAlester Community Relations Commission ("the Commission"). Following a thorough investigation, the Commission entered detailed findings of racial discrimination against the Housing Authority and its Executive Director, Robert L. Badeen ("Badeen"), in connection with Johnson's employment as a security guard. A conciliation agreement resolving Johnson's complaints was entered

---

1. At the time of his termination, Johnson was Chief of the Security Department.

into on April 19, 1990, between Johnson, the Housing Authority, and the Commission.

For fiscal year 1991, the Housing Authority applied for HUD's Public and Indian Housing Drug Elimination Program ("PHDEP"). By seeking funding under the PHDEP, the Housing Authority was seeking additional assistance (beyond that provided for protective services under the operational budget) from HUD to achieve a drug-free environment for its rental properties. On September 30, 1991, HUD approved the Housing Authority's application for PHDEP funding in the amount of $137,000 for 1992. The PHDEP grant was used in part to fund the Housing Authority's contract with the Pittsburg County Sheriff's Department ("the Sheriff's Department") for additional law enforcement services. The Sheriff's Department was to assist the Housing Authority in eliminating drug related activity from the housing properties and to increase the safety and security of the housing residents through additional patrolling and monitoring of such properties.

Based on its approval of the Housing Authority's 1991 PHDEP grant request, HUD notified the Housing Authority on July 10, 1992, that it was decreasing the amount allocated in the 1993 operating budget for protective services to zero. HUD informed the Housing Authority that this reduction to zero was because "[p]rotective services are included in your 1991 Public Housing Drug Elimination Program Grant budget." The Housing Authority appealed this reduction from its operating budget, but was unsuccessful. As a result of HUD's termination of funding for protective services, the Housing Authority notified Johnson and the three other Security Department employees that their employment was to be terminated effective August 31, 1992. After exhausting his administrative remedies, Johnson initiated this lawsuit claiming unlawful employment discrimination.

## II.

Having moved for summary judgment in its favor, the Housing Authority is required to show the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). Its initial burden is to show the absence of evidence to support Johnson's case. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Housing Authority must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The Housing Authority need not negate Johnson's claim or disprove his evidence, but rather, its burden is to show that there is no evidence in the record to support Johnson's claim. Johnson, as the nonmoving party, must go beyond the pleadings and by way of affidavits or "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for Johnson. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In this regard, all of Johnson's evidence is deemed true and all reasonable inferences are drawn in his favor. This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. With these standards in mind, the court turns to the merits of the Housing Authority's motion.

## III.

Essentially, the Housing Authority's response to Johnson's claim of discriminatory termination is the defense of a nondiscriminatory reduction in force occasioned by the elimination of funding from HUD. The Housing Authority claims HUD's elimination of funding for protective services from the Housing Authority's operating budget prevented it from retaining *all* employees in the Security Department.[2] It is also argued that

2. Although not conclusively established by competent evidence in the record, the Housing Authority states in its brief that the security department was comprised of four employees: Johnson

the terms of the PHDEP grant and federal regulations prevented the Housing Authority from redirecting PHDEP funds (used to pay law enforcement officers from the Sheriff's Department) to pay for the continued employment of Johnson and the other Security Department employees.

In order to help courts properly focus on the issue of intentional discrimination, the Supreme Court has established a procedure to evaluate the evidentiary burdens and presentation of proof in discriminatory treatment cases under Title VII. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must establish, by a preponderance of the evidence, a "prima facie" case of racial discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, n. 8, 101 S.Ct. 1089, 1094, n. 8, 67 L.Ed.2d 207 (1981). In the context of racial discrimination arising from a reduction in force, a plaintiff must demonstrate:

1. He was within the protected group;

2. He was adversely affected by the employer's employment decision;

3. He was qualified for the position at issue; and

4. There is evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.

*Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 800 (10th Cir.1993); *Bell v. AT & T,* 946 F.2d 1507, 1510, n. 1 (10th Cir.1991); *Branson v. Price River Coal Co.,* 853 F.2d 768, 770–71 (10th Cir.1988). With respect to a retaliation claim, a plaintiff is required to demonstrate:

1. protected opposition to Title VII discrimination or participation in a Title VII proceeding;

2. adverse action by the employer subsequent to or contemporaneous with such employee activity; and

(a black), an American Indian, and two white employees. Johnson does not dispute this state-

3. a causal connection between such activity and the employer's action.

*Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993); *Burrus v. United Telephone Co.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 385 (10th Cir.1984).

The establishment of a prima facie case of retaliation or racial discrimination in connection with a reduction in force creates a presumption of discrimination and shifts the burden to the employer to produce evidence "that the adverse employment action was taken for a legitimate, nondiscriminatory reason." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Should the employer meet its burden of adducing a nondiscriminatory reason for its decision, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Although the presumption created by the establishment of a prima facie case of discrimination does shift the burden of *production* to the employer, it is important to remember that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

In employment discrimination cases, the plaintiff must do more than establish a prima facie case of discrimination in order to survive a motion for summary judgment. *Hooks,* 997 F.2d at 798. Once the defendant has rebutted the presumption raised by the prima facie case, "the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095. The plaintiff may show discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095. "The court 'must still make a judg-ment.

ment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.'" *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121–22 (10th Cir. 1991) (quoting *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir.1989)). If the court is convinced that no facts remain in dispute concerning the pretextuality of the employer's action, summary judgment is appropriate. *Hooks*, 997 F.2d at 798.

In this case, the court concludes that it need not evaluate Johnson's claims beyond the prima facie evidence stage as Johnson has failed to present the court with sufficient evidence to establish a presumption of unlawful discrimination in connection with his discharge. While it is conceded that Johnson has established the first three elements of a prima facie case of discrimination in connection with a reduction in force and the first two elements of a prima facie case of retaliation, the evidence fails with respect to the last element for a prima facie case under both theories.

■ Applying the *McDonnell Douglas* criteria to Johnson's discrimination claim arising from a reduction in force, the court finds (1) Johnson is a member of a protected class, (2) he was adversely affected by the Housing Authority's action, and (3) he was qualified for the position of security guard. It is the last element of the prima facie case—evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the Housing Authority intended to discriminate in reaching its decision—which lacks any support in the record. The Housing Authority has established that the funding for protective services was reduced to zero by HUD as a result of the Housing Authority's receipt of the PHDEP grant. The money received under the PHDEP grant was used, in part, to secure law enforcement services from the Sheriff's Department. It is undisputed that Johnson and the other protective services employees were not providing law enforcement services to the Housing Authority properties. The Housing Authority contends that the terms of the PHDEP and HUD regulations prevented money allocated for law enforcement services under the PHDEP grant from being redirected to the protective services staff. This was clearly the position taken by the Housing Authority when it notified Johnson in a letter dated July 16, 1992, that HUD's reduction of funding in the operating budget resulted in the termination of funding for the entire Security Department leaving the Housing Authority with no alternative but to terminate all employees of the Security Department. The court finds that the Housing Authority's interpretation of the effect of HUD's budgetary action was a reasonable response given the terms of the PHDEP grant and HUD regulations.[3] Further, even assuming the Housing Authority's interpretation of the terms of the PHDEP grant and HUD regulations was erroneous, it does not provide any support for a finding of a racially motivated discharge because the Housing Authority's response was to eliminate *all* positions in the Security Department. Johnson was not treated differently than the other employees of the Security Department. All employees were terminated and there was no selective treatment with regard to the actions taken by the Housing Authority. In sum, the Housing Authority's decision to discharge *all* employees of the Security Department in

**3.** The Housing Authority directs the court's attention to the terms of PHDEP grant and HUD regulations regarding (1) its inability to fund other activities or projects funded under any other HUD program and (2) its inability to redirect funds from the PHDEP grant to pay for protective services. The Housing Authority has attached the PHDEP grant and cited the HUD regulations. The court has reviewed the attached PHDEP grant and the cited regulations, 56 FR 28290 et seq., and concludes that, without further explanation and clarification, it cannot agree with the Housing Authority's unequivocal statements regarding its ability to fund protective services from the PHDEP grant. While the Housing Authority's construction is certainly a plausible one and it may be the correct one, the court cannot make that determination without additional information. Notwithstanding this conclusion, the court finds that the Housing Authority's construction is not suspect for purposes of an evaluation of discriminatory intent as there is no racial or otherwise impermissible factor which plays a part in the Housing Authority's construction. Where the subject matter has no possible connection with discriminatory intent, the court will not second guess an employer's business-related interpretation.

response to HUD's reduction of funding from the operating budget negates any possible finding of discriminatory intent.

Johnson also attempts to establish that the Housing Authority intended to discriminate against him on the basis of his race by directing the court's attention to correspondence between HUD and the Housing Authority. Following HUD's July 10, 1992, letter informing the Housing Authority that protective services funding would be reduced to zero, the Housing Authority sent a letter on July 20, 1992, to HUD objecting to HUD's decision and requesting that HUD reconsider its decision. As part of that July 20, 1992, letter, the Housing Authority representative wrote:

Please be reminded that a discrimination complaint was filed against this Authority by a member of the security personnel in October 1989, and this decision by HUD appears to be retaliation for the filing of that complaint. The McAlester Housing Authority Board of Commissioners is hereby requesting immediate documentation from your office to include full explanation of all reasons on which HUD has based this decision.

Johnson somehow interprets this statement as evidence of the Housing Authority's discriminatory intent. To the contrary, this letter clearly is an appeal on behalf of Johnson and the other employees for reconsideration of HUD's funding decision. The Housing Authority is stating that *HUD's action* appears to be retaliation. This is certainly not an admission of discrimination by the Housing Authority and it does not indicate that the Housing Authority is taking any retaliatory or racially discriminatory action. Johnson's reliance on the July 20, 1992, letter in support of an inference of discriminatory intent is patently fallacious.

Finally, Johnson relies on newspaper articles in support of his claim that the Housing Authority knew or should have known that the Sheriff's Department inadequately performed its law enforcement functions under the PHDEP-funded contract. These articles are inadmissible hearsay. *See New England Mutual Life Insurance Company v. Anderson,* 888 F.2d 646, 650 (10th Cir.1989)

("The fact that the statement was in the form of a newspaper account reinforces its hearsay character, for the final product is not the reporter's alone, and it was not demonstrated that the statements as reported were accurate."). Additionally, even assuming the admissibility of such articles, the court fails to see how they are relevant to the issue of whether the Housing Authority's actions with respect to Johnson were racially motivated.

■ Application of the *McDonnell Douglas* criteria to Johnson's retaliation claim leads to a similar result. Johnson has failed to establish a prima facie case of retaliation. The first two elements of a prima facie case have been established. Johnson has established his engagement in protected activity by filing his 1990 discrimination complaint against the Housing Authority and the adverse employment action in the form of his termination. He has not, however, established the necessary causal connection between his protected activity and the Housing Authority's decision to terminate his employment. Johnson filed his discrimination complaint with the Commission in 1990 and the conciliation agreement was entered into on April 19, 1990. The Housing Authority notified Johnson of his termination on July 20, 1992—approximately two years after Johnson's protected activity. Absent other evidence retaliatory motive, a two-year span between Johnson's engagement in protected activity and the adverse employment action is too long a period of time to support a finding of a causal connection. *See Meredith v. Beech Aircraft,* 59 FEP 962, 1992 WL 190675 (D.Kan.1992), *aff'd in relevant part,* 18 F.3d 890 (10th Cir.1994) (four-month period between protected activity and alleged adverse employment action was too long a period of time to establish a causal connection); *Harris v. Board of Public Utilities,* 57 FEP 1195, 1991 WL 126525 (D.Kan.1991) (one year period between alleged protected conduct and discharge insufficient); *Figgous v. Allied/Bendix Corp.,* 906 F.2d 360 (8th Cir.1990) (discharge approximately two years after the filing of administrative complaints not sufficient to establish prima facie case of retaliation). Since the record is void of any other evidence suggesting a retaliatory mo-

tive on the part of the Housing Authority, the court concludes that the period between Johnson's protected activity and his termination is too long to establish the necessary causal connection.[4]

 Finally, to the extent Johnson's claim of a breach of the conciliation agreement is actionable, the court finds no breach in connection with his discharge. The conciliation agreement resolved issues of racial discrimination and afforded Johnson remedial relief. The conciliation agreement did not, however, alter Johnson's status as an at-will employee. Thus, absent proof of a violation of a specific term of the conciliation agreement, Johnson's contention that the conciliation agreement was breached when his employment was terminated is legally insufficient.

Johnson contends that the Housing Authority's decision to eliminate the Security Department instead of consolidating the protective services and law enforcement services amounts to a breach of the parties' conciliation agreement. The court disagrees. Johnson has failed to direct the court's attention to any provision of the conciliation agreement which arguably could have been breached as a result of the Housing Authority's reduction in force. Consequently, the court finds no breach of the conciliation agreement.

## IV.

Based on the foregoing reasons, the court finds Johnson has failed to establish a prima facie case of either racial discrimination arising from reduction in force or retaliation. Further, the court finds no breach of the parties' conciliation agreement. Consequent-

ly, the Housing Authority's motion for summary judgment is granted and this action is dismissed in its entirety.[5]

**IT IS SO ORDERED.**

---

4. Johnson's retaliation claim must fail even if the court were to assume the existence of a causal connection. As previously held in connection with his racial discrimination claim, Johnson has failed to offer any competent evidence to raise an inference of discriminatory intent on the part of the Housing Authority. In this regard, the Housing Authority's asserted nondiscriminatory reason of a reduction in force due to lack of funds remains uncontested. Thus, even assuming a prima facie case of retaliation, the court finds that Johnson has failed to present any evidence of discriminatory intent or pretext to overcome the Housing Authority's asserted nondiscriminatory reason.

5. Johnson requests the court delay ruling on the motion for summary judgment and grant him additional discovery time under Rule 56(f) of the Federal Rules of Civil Procedure. The court denied a similar request made by Johnson at the pretrial conference. The court finds no reason to change its previous ruling and further notes that on neither occasion has Johnson demonstrated what additional materials he would have been able to present in opposition to the summary judgment motion.