UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ELIZABETH PERRY,

        Plaintiff-Appellant and
        Cross-Appellee,

v.

JUDY WOODWARD, individually and
as the Bernalillo County Clerk and
THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF BERNALILLO,

        Defendants-Appellees and
        Cross-Appellants.

Nos. 97-2343 and 98-2003

ORDER
Filed December 20, 1999

Before **EBEL**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

These matters are before the court on Appellees' Petition for Rehearing with a Suggestion for Rehearing En Banc. We also have the plaintiff - appellant's response. Upon consideration, the panel grants the Petition for Rehearing, withdraws the prior panel opinion, and issues the attached amended opinion in its place.

The Suggestion for Rehearing En Banc was circulated to all the active judges of the court. No active judge having called for a poll, the Suggestion for Rehearing En Banc is denied.

Entered for the Court,
Patrick Fisher, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELIZABETH PERRY,

      Plaintiff-Appellant and
      Cross-Appellee,

v.

JUDY WOODWARD, individually and
as the Bernalillo County Clerk and
THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF BERNALILLO,

      Defendants-Appellees and
      Cross-Appellants.

Nos. 97-2343 and 98-2003

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-96-1488-JHG/WWD)

---

Steven K. Sanders, Albuquerque, New Mexico, for Plaintiff-Appellant/Cross-Appellee.

William D. Slease (Henry F. Narvaez, and Jonlyn M. Martinez, with him on the briefs) of Narvaez, Slease and Schamban, P.A., Albuquerque, New Mexico, for Defendants-Appellees/Cross-Appellants.

Before **EBEL**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

Plaintiff, Elizabeth Perry ("Perry"), sued her employer, the Board of County Commissioners of the County of Bernalillo, and the County Clerk, Judy Woodward ("Woodward"), individually and as County Clerk (collectively "Defendants"), alleging she was discriminated against on the basis of her race and retaliated against because she opposed employment practices made unlawful by state and federal laws. Perry's complaint alleged that Defendants violated the provisions of both the New Mexico Human Rights Act and 42 U.S.C. § 1981.

Defendants moved for summary judgment.[1] The district court held that Perry had failed to establish a prima facie case of racial discrimination under New Mexico law by either direct or indirect evidence. Additionally, the district court ruled that Perry could not maintain a cause of action under 42 U.S.C. § 1981 because she was an at-will employee. The district court also held that Perry was required to present evidence of intentional discrimination to prevail under 42 U.S.C. § 1981 but had failed to do so. The district court, therefore, granted

---

[1]Upon the stipulation of the parties, the motion for summary judgment was heard by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c).

Defendants' motion for summary judgment and dismissed all of Perry's state and federal claims with prejudice. The district court denied Defendants' subsequent motion for attorney's fees. Perry appeals the dismissal of her claims. Defendants appeal the denial of their attorney's fees.

This court exercises jurisdiction over both appeals under 28 U.S.C. § 1291 and 636(c)(3). This court **REVERSES** the summary judgment and **VACATES** as moot the order on attorney's fees.

## No. 97-2343

I.     FACTUAL BACKGROUND

The evidence is either uncontroverted or treated in a light most favorable to Perry, the non-moving party. On January 1, 1993, Woodward took office as the County Clerk for Bernalillo County, New Mexico. In February 1993, Woodward hired Perry to serve as Deputy County Clerk. Perry began her employment as Deputy County Clerk on March 1, 1993. At the time she accepted the job, Perry understood that the position of Deputy County Clerk was an at-will position.

Woodward began making racist remarks to employees shortly after taking office as County Clerk. During the first staff meeting for employees of the Clerk's office after her election, and in the course of discussing the educational opportunities available to county employees, Woodward announced that Hispanics needed more education. While speaking with Donna Lopez, an Hispanic

-3-

employee of the County Clerk's office, Woodward called Lopez a "dirty Mexican." Lopez reported this incident to Viola Cortez, the union steward for the White Collar Union. Cortez was also informed by another employee, Kathy Sandoval, that Woodward had told Sandoval that "Mexicans smell bad." In another incident, Woodward approached Rachel Martinez, the union president, and stated, "You know, there's some Afro-Americans, Rachel, you know that they have bad body odor. There's a lot of Hispanics that have it." After a union meeting attended by county employees, Woodward told Martinez, "There's a lot of old ladies there, and, you know, they're Hispanics, they're set in their own ways. They don't want to learn the new things. . . . I know I can't go in there and start firing everybody, but I can make it so miserable that they will leave, one at a time." In the course of a work-related conversation, Woodward asked Julie Childers, "Do you know why I don't like Hispanics? . . . I don't like Hispanics 'cause they're hot blooded and my ex-husband left me for a hot blooded Mexican."

In December 1993, Perry, who had authority to make hiring decisions, hired an Hispanic woman, Tina Gallegos, to fill a vacant position in the County Clerk's office. Shortly thereafter, in the presence of Jaime Diaz, a supervisor in the Bureau of Elections, Woodward told Perry not to hire any more Hispanic candidates. During a budget meeting held in January 1994, a discussion ensued

involving the addition of new positions to the County Clerk's office. During the

course of that discussion, Woodward turned to Perry and said, "And you, I don't

want you hiring any more Hispanics." After the meeting, Woodward informed

Perry that she intended to be present during all future job interviews conducted by

Perry to ensure that Perry "hired some Anglos."[2]

When a clerical position opened up in the County Clerk's office, Woodward

sat in while Perry interviewed candidates for the position. In February 1994,

Perry hired Arlene Martinez, an Hispanic woman, to fill the clerical position.

Approximately one week later, Woodward approached Irene Serna, informed her

that she was contemplating firing Perry, and offered Perry's job to Serna.

Woodward fired Perry on February 26, 1994. Woodward subsequently hired

Serna to replace Perry as Deputy Clerk. Serna is Hispanic.

## II.    STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*, applying the

same standard applied by the district court. *See McKnight v. Kimberly Clark*

*Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Under this standard, this court

examines the record to determine whether any genuine issue of material fact is in

---

[2]Perry testified that after the meeting, Woodward told her "not to even
waste my time looking at applications with Hispanic names, not to waste my time
interviewing, because she would be present, she wanted to be present in my
interviews and make sure that I hired some Anglos."

dispute. We construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). When the nonmovant will bear the burden of proof at trial, she can survive summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of any essential and contested element of her case. *See McKnight*, 149 F.3d at 1128.

If there are no material issues of fact in dispute, this court determines whether the district court correctly applied the substantive law. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). When this court reviews a grant of summary judgment, it reviews the district court's conclusions of law *de novo*. *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290-91 (10th Cir. 1999). A district court's determination of New Mexico law is also reviewed *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *Western Heritage Ins. Co. v. Chava Trucking Inc.*, 991 F.2d 651, 653 (10th Cir. 1993).

III.  DISCUSSION

A.  Claims Arising Under 42 U.S.C. § 1981

The district court held that Perry's claims arising under 42 U.S.C. § 1981 (hereinafter "section 1981") must be dismissed because Perry was an at-will employee and is, therefore, unable to establish a violation of section 1981.

Further, the district court held that Perry must provide proof of intentional discrimination to prevail under section 1981 and failed to do so.

### 1.   At-Will Employment Relationship

The parties agree that Perry had no written employment contract and was an at-will employee under New Mexico law.  *See Sanchez v. The New Mexican*, 738 P.2d 1321, 1323 (N.M. 1987) (recounting that, under New Mexico law, unless there is an explicit contract of employment stating otherwise, employment is terminable "at will").   Because no material factual dispute exists with respect to Perry's employment status, this court will reverse the grant of summary judgment only if the district court misapplied substantive law when it concluded that an at-will employee cannot maintain a cause of action under section 1981.  *See Kaul,* 83 F.3d at 1212.

Section 1981(a) provides, in part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  In 1989, the Supreme Court held that section 1981's prohibition against discriminatory conduct did not extend beyond the formation of a contract to conduct occurring after the establishment of the contractual relationship.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989) (holding that section 1981 "does not apply to

conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations").

In response to *Patterson* and other cases, Congress enacted the Civil Rights Act of 1991. *See* Pub. L. No. 102-166, 105 Stat. 1071; *see also* H.R. Rep. No. 102-40(II), at 2 (1991) (stating that one of the purposes of the Civil Rights Act of 1991 was to "respond to recent Supreme Court decisions by restoring the civil rights protections that were dramatically limited by those decisions"). Pursuant to the Civil Rights Act of 1991, the existing text of section 1981 was redesignated as section 1981(a) and subsections (b) and (c) were added. *See* Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72. Section 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 now clearly prohibits discriminatory conduct that occurs both before and after the establishment of the contractual relationship. *See id.*; *see also Hopkins v. Seagate,* 30 F.3d 104, 105 (10th Cir. 1994) (stating that the termination of contracts is included in the protections afforded by section 1981, as amended by the Civil Rights Act of 1991).

Even as amended, section 1981 continues to center on the protection of contractual rights. *See* 42 U.S.C. § 1981(a). Although an employee can now seek

redress for discriminatory conduct engaged in by her employer either before or after the formation of the employment relationship, any claim brought pursuant to section 1981 must still be supported by an underlying right of the employee to "make and enforce contracts." *Id*.

Defendants interpret section 1981 to require the existence of a contractual relationship between an employee and her employer and argue that this contractual relationship can only arise if an employee and her employer have entered into a written employment contract. Defendants argue that the absence of a written employment contract is fatal to an employee's section 1981 claim. Defendants claim Perry cannot maintain a cause of action under section 1981 because she was an at-will employee without a written employment contract.

This court has never directly addressed the question of whether an at-will employee can bring a cause of action under section 1981.[3] For the reasons articulated below, this court declines to adopt the narrow interpretation of section 1981 promoted by Defendants.

Perry's relationship with her employer consisted of Perry's rendition of services in exchange for her employer's payment of wages. Under New Mexico

---

[3]In at least one instance, the United States District Court for the District of New Mexico has held that an at-will employee can maintain a cause of action for retaliation under section 1981. *See O'Neal v. Ferguson Constr. Co.*, 35 F. Supp.2d 832, 837-38 (D.N.M. 1999).

law, this is a contractual relationship. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1109 (N.M. 1988) ("When an employment contract is not supported by any consideration other than performance of duties and payment of wages, and there is no explicit contract provision stating otherwise, *it is an employment contract for an indefinite period* and terminable-at-will by either party." (emphasis added)). Although Perry was an at-will employee, her relationship with her employer was contractual. *See id*.

Resolution that a contractual relationship existed only begs the question of whether the contractual relationship between Perry and her employer embodied sufficient contractual rights to support a cause of action for wrongful termination under section 1981. The Seventh Circuit Court of Appeals, for example, has suggested that, because an at-will employment contract does not encompass termination terms, an at-will employee cannot bring an action for wrongful termination against her employer under section 1981. *See, e.g.*, *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998) (dicta); *see also Gandy v. Gateway Found.*, 1999 WL 102777, *17-*18 (N.D. Ill. Feb. 22, 1999) (magistrate judge's report and recommendation) (discussing *Gonzalez* and implying that an at-will employment relationship would only be sufficient to support a section 1981 claim for demotion or reduction in pay). Those who advance or embrace this argument reason that because an at-will employee may be

discharged at any time, the terms of an at-will employment contract extend only to wages, benefits, duties, and working conditions, but do not encompass the time or manner of termination. Consequently, they conclude that because terminations for any reason or no reason are permissible under the terms of an at-will employment contract, employees cannot bring claims under section 1981 alleging wrongful termination.

This position has been explicitly rejected by both the Fourth and Fifth Circuit Courts of Appeal. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1020 (4th Cir. 1999); *Fadeyi v. Planned Parenthood Ass'n*, 160 F.3d 1048, 1052 (5th Cir. 1998). The amendment of section 1981 to include a prohibition against racially discriminatory conduct in the termination of contracts has effectively altered the at-will employment relationship. Although the general rule that an employer can discharge an at-will employee for any reason or no reason is still valid, an employer can no longer terminate an at-will employment relationship for a racially discriminatory reason. *See* 42 U.S.C. § 1981(b); *see also Hopkins,* 30 F.3d at 105 (stating that the protections of section 1981 now encompass the termination of the employment relationship).

The great weight of well-reasoned authority supports this court's conclusion that the employment-at-will relationship encompasses sufficient contractual rights to support section 1981 claims for wrongful termination. *See*,

*e.g.*, *Spriggs*, 165 F.3d at 1018-20*; Faydei*, 160 F.3d at 1049-52; *LaRocca v. Precision Motorcars, Inc.*, No. 4:98CV3195, 1999 WL 191568, at *11-*13 (D. Neb. Mar. 26, 1999); *O'Neal v. Ferguson Constr. Co.*, 35 F. Supp.2d 832, 837-38 (D.N.M. 1999); *Williams v. United Diary Farmers*, 20 F.Supp.2d 1193, 1201-02 (S.D. Ohio 1998); *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1272 (M.D. Ala. 1998); *Harris v. New York Times*, No. 90 CIV. 5235, 1993 WL 42773, at *3-*4 (S.D.N.Y. Feb. 11, 1993). The district court erred as a matter of law when it dismissed Perry's claims arising under section 1981 because she was an at-will employee.

### 2. *Evidence of Intentional Discrimination*

The district court also held that the dismissal of Perry's section 1981 racial discrimination claim was mandated by Perry's failure to produce any evidence of intentional discrimination. *See Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) ("Only intentional discrimination may violate section 1981."). It is well settled that a plaintiff can show intentional discrimination either by direct evidence of discrimination or by indirect evidence, employing the burden-shifting framework first articulated in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[4] *See Trans World*

_____

[4]Perry also argues that a plaintiff who has no direct evidence of racial discrimination and who is not able to establish a prima facie case through a typical *McDonnell Douglas* analysis can nevertheless satisfy her initial burden by

*Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir.), *cert. denied,* 120 S. Ct. 50 (1999).

### a.  *Direct Evidence*

Perry argues that evidence of an existing discriminatory employment policy in the County Clerk's office is direct evidence that there was an illegal discriminatory motive underlying her termination.  This argument is misplaced in light of the evidence before the district court.  In the line of cases referenced by Perry, the adverse employment action suffered by the plaintiff occurred as a direct result of the discriminatory policy.  *See, e.g., Trans World Airlines, Inc.,* 469 U.S. at 121.  In the instant case, there is no direct evidence Perry was fired as a result of the racially discriminatory hiring barriers which Woodward allegedly attempted to impose.  Any evidence of Woodward's advocation or implementation of a discriminatory hiring policy does not constitute direct evidence that Perry's termination was motivated by racial discrimination.

Perry also argues that the pervasion of racist statements made by Woodward constitutes direct evidence of racial discrimination.  When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination,

---

introducing indirect evidence whose "cumulative probative force" supports a "reasonable probability of discrimination."  Appellant's Brief at 16. We assume Perry is referring to the evidence of Woodward's many, racially-charged statements.  We decline to address this argument in light of our holding, *infra*, that Perry has met her prima facie burden.

this court has held that the plaintiff "must demonstrate a nexus exists between [the] allegedly discriminatory statements and the . . . decision to terminate her." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994); *see also Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477-78 (10th Cir. 1996).

The evidence introduced by Perry consists of isolated, disparaging comments made by Woodward to and about Hispanics in general and Hispanic employees of the County Clerk's office in particular. Perry acknowledged during her deposition that none of the derogatory comments made by Woodward were directed toward her. There is no evidence in the record that any of Woodward's comments were intended to directly describe Perry. Further, Perry has failed to demonstrate a causal nexus between Woodward's racist comments and her discharge. Woodward's alleged comments are abhorrent and profoundly unprofessional. They, however, do not represent direct evidence that Perry's termination was the result of Woodward's alleged racism. Accordingly, we agree with the district court's conclusion that Woodward's comments are nothing more than an expression of her personal opinion and, as such, do not constitute direct evidence of a racially-motivated discharge.

       b.     *Indirect Evidence*

A plaintiff who lacks direct evidence of racial discrimination may rely on indirect evidence of discrimination by invoking the analysis first articulated in *McDonnell Douglas*.  *See McDonnell Douglas*, 411 U.S. at 802-04.  While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981.  *See Thomas v. Denny's*, *Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).  When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff.  *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). The ultimate burden of proving discrimination, however, is borne by the plaintiff.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

A plaintiff relying on *McDonnell Douglas* bears the initial burden of establishing a prima facie case by a preponderance of the evidence.  *See Burdine,* 450 U.S. at 252-53.  One way a plaintiff may establish a prima facie case of wrongful termination is by showing that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge.  *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174-75 (10th Cir. 1996); *Lujan v. New Mexico Health & Soc. Servs. Dep't*, 624 F.2d 968, 970 (10th Cir. 1980); *Ray v. Safeway*

*Stores, Inc.*, 614 F.2d 729, 730 (10th Cir. 1980). If the plaintiff establishes her prima facie case, a rebuttable presumption arises that the defendant unlawfully discriminated against her. *See Hicks*, 509 U.S. at 506-07. The defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. *See McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment only if she is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Defendants argue that to establish a prima facie case of racial discrimination under section 1981, Perry, who is Hispanic, must show that the individual who was hired to replace her was not Hispanic. Contrary to arguments advanced by Defendants, the Supreme Court has not adopted a test requiring a plaintiff to prove that his replacement does not share his protected attribute. *See Hicks*, 509 U.S. at 506. The language from *Hicks* relied on by Defendants in support of their position could not rationally be construed as the adoption of such a fourth element:

> Petitioners do not challenge the District Court's finding that respondent satisfied the minimal requirements of such a prima facie case (set out in *McDonnell Douglas*, . . .) by proving (1) that he is black, (2) that he was qualified for the position of shift commander, (3) that he was demoted from that position and ultimately discharged,

-16-

and (4) that the position remained open and *was ultimately filled by a white man*.

*Id*. (emphasis added)

This language represents the Court's restatement of a portion of the district court's ruling and a clarification that the appeal did not involve any claim by the defendants that the plaintiff had not met his prima facie burden. The race of the plaintiff's replacement was never an issue in *Hicks* and the Court did not consider it. Justice Souter, in his dissent, clarifies that the Court has never directly addressed the significance of the physical characteristics of an individual's replacement. *See id*. at 527 n.1 (Souter, J., dissenting) ("The majority . . . mentions that Hicks's position was filled by a white male. This Court has not directly addressed the question whether the personal characteristics of someone chosen to replace a Title VII plaintiff are material, and that issue is not before us today.").

Defendants also argue *O'Connor v. Consolidated Coin Caterers Corp*. supports their position that no inference of discrimination can ever arise unless a plaintiff shows that his replacement does not share his protected attribute. *See* 517 U.S. 308, 311-12 (1996). It is undeniable that the Court in *O'Connor* reiterated that there must be a logical connection between each element of the prima facie case and the inference of discrimination. *See id*. Nevertheless, *O'Connor* provides no support for Defendants' position. In *O'Connor*, an age

-17-

discrimination case, the Court found no logical connection between a plaintiff's replacement being outside the protected class and the inference of discrimination. *See id*. at 312. Justice Scalia, writing for a unanimous Court, held that the plaintiff was not required to show he was replaced by someone outside the protected class stating, "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age." *Id*.

This court has never *applied* a test containing the inflexible requirement that a plaintiff who is a member of a group that has historically been discriminated against must show that she was replaced by someone outside her protected class to establish a prima facie case of wrongful termination under the *McDonnell Douglas* framework. *But see Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995) (requiring a *white* plaintiff who alleged she had been denied a promotion because of her race to show that the position she sought was filled by a non-white). [5] While several wrongful-discharge decisions have recited

_____

[5]*Reynolds* involved a white, female plaintiff who brought, among other claims, a section 1981 failure-to-promote claim. *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995). The individual who received the promotion sought by Reynolds was also a white female. This court held that Reynolds had failed to meet her prima facie burden because she could not show that the promotion was given to someone of another race. *See id*. The court in *Reynolds* clearly stated that a modification of the traditional *McDonnell Douglas* prima facie elements is necessary in reverse discrimination actions. *See id.* A white plaintiff alleging reverse discrimination "does not necessarily deserve the

a test containing a requirement that a protected class member show that the position from which he was terminated remained open or was filled by a person not a member of the protected class, none of these decisions have applied the test. *See, e.g., Murray v. City of Sapulpa*, 45 F.3d 1417, 1420 (10th Cir. 1995); *Randle,* 69 F.3d at 451 n.13. [6] Similar tests have been articulated, but never applied, in cases involving failure-to-promote claims. *See, e.g.*, *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir. 1997); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997); *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469 (10th Cir. 1992). The physical characteristics of the individual who replaced the plaintiff or received the position sought by the plaintiff were not dispositive in any of these cases. Thus, a test requiring that the replacement or promoted person be outside the protected class exists only in *dicta*.

It appears the language implicating the physical characteristics of the employee's replacement originated in age discrimination cases in which this court

---

presumption of discrimination afforded to a member of an ostensibly disfavored minority class." *Id*. Additionally, a failure to promote does not implicate the economic disincentive to terminate a qualified employee, i.e, the individual denied the promotion does not need to be replaced.

[6]Both *Murray* and *Randle* cite *McDonnell Douglas* as the source of the four elements of the prima facie test they recite. The original fourth element set out in *McDonnell Douglas*, however, did not require the plaintiff to show that the position he sought was filled by someone outside the protected class but merely required him to show that, "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

articulated a prima facie case that included a requirement of replacement by someone outside the protected class. *See Schwager v. Sun Oil Co. of Pennsylvania*, 591 F.2d 58, 61 (10th Cir. 1979) (holding that a plaintiff alleging age discrimination must show he was replaced by someone 45 years old or younger); *see also Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir. 1991); *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119 (10th Cir. 1991); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988); *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986). The first non-ADEA case in which this court suggests a fourth element requiring an individual who suffered an adverse employment action to prove that the new hire or replacement employee did not share the protected attribute is *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 799 (10th Cir. 1993), *overruled in part on other grounds*, *Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995). *Hooks* relied on three of the age discrimination cases cited *supra* for its recitation of that requirement. *See id*. Any discussion of the fourth element in *Hooks* is *dicta*, however, because Hooks was never replaced; his position was eliminated and he was given a choice between early retirement and a demotion. [7] *See id*. at 795. *Hooks* demonstrates that the cases

---

[7]*Hooks* also involved a failure-to-promote claim. *See Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 795 (10th Cir. 1993), *overruled in part on other grounds*, *Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995).

which reference a fourth element implicating the physical characteristics of an employee's replacement evolved from a rule previously applicable in age discrimination cases. This rule has since been specifically rejected by the Supreme Court. *See O'Connor*, 517 U.S. at 311-12 (holding that age discrimination plaintiff need not show that his replacement was outside the protected class).

The imposition of the inflexible rule advocated by Defendants is untenable because it could result in the dismissal of meritorious claims. Defendant's rule would preclude suits against employers who replace a terminated employee with an individual who shares her protected attribute only in an attempt to avert a lawsuit. It would preclude suits by employers who hire and fire minority employees in an attempt to prevent them from vesting in employment benefits or developing a track record to qualify for promotion. It would also preclude a suit against an employer who terminates a woman it negatively perceives as a "feminist" and replaces her with a woman who is willing to be subordinate to her male co-workers or replaces an African-American with an African-American who is perceived to "know his place." Although each of these situations involves wrongfully-motived terminations, under the rule advocated by the Defendants,

---

However, with respect to that claim, the court did not recite a prima facie test that implicated the physical characteristics of the individual who received the promotion. *See id*. at 796.

the terminated employee would be unable to meet the prima facie burden. Such a result is unacceptable.

Neither the Supreme Court nor this court has previously applied the rule advocated by Defendants, and this court declines the invitation to adopt it. A non-white employee who claims to have been discharged as a result of racial discrimination can establish the fourth element of her prima facie case without proving that her job was filled by a person who does not possess her protected attribute.[8] *See, e.g., Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1410 n.3 (10th Cir. 1984) (characterizing as "stricter" the tests adopted by some courts which require a plaintiff to show that her employer either assigned a non-minority person to her job or retained non-minority employees having comparable or lesser qualifications).

---

[8]If a plaintiff is able to establish a prima facie case under the *McDonnell Douglas* analysis, she has merely created a rebuttable presumption that her employer unlawfully discriminated against her. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). If the racial characteristics of a plaintiff's replacement were applicable at the prima facie stage, a plaintiff would effectively be required to raise the inference not only that she was discriminated against but that her employer also discriminates against every other employee or potential employee who shares her protected attribute. *Cf. Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.") The replacement of a terminated plaintiff with an individual who shares the plaintiff's protected attribute does not necessarily negate the inference that the plaintiff was unlawfully discriminated against.

This court has stated that a plaintiff may establish a prima facie case of wrongful termination by showing that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *See Lowe*, 87 F.3d at 1174-75; *Lujan*, 624 F.2d at 970; *Ray*, 614 F.2d at 730. This court has also stated that the fourth element of the prima facie test is met if the discharged plaintiff can show that someone was hired to replace her. *See Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir. 1983) (holding that the fact the position was filled, instead of remaining open, did not preclude employee from establishing a prima facie case); *Crawford v. Northeastern Okla. State Univ.*, 713 F.2d 586, 588 (10th Cir. 1983) (same).

Notwithstanding the large number of cases which articulate the prima facie test in wrongful-discharge cases, the issue before this panel has never been squarely addressed by this court. Several circuits have addressed the issue and have held that a plaintiff can satisfy the prima facie burden without proving that the position was filled by an individual who does not share the protected attribute. Some circuits have concluded only that a plaintiff is *not precluded* from meeting the prima facie burden by an inability to demonstrate that the

replacement employee does not share her protected attribute. [9] *See, e.g., Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352-54 & n.6 (3rd Cir.1999) (collecting cases); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997) (distinguishing inconsistent cases in the Fifth Circuit); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition.") (relying on *O'Connor* in a reverse discrimination case); *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993); *Jackson v. Richard's Med. Co.*, 961 F.2d 575, 587 n.12 (6th Cir. 1992); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534 (11th Cir. 1984).

The First Circuit, however, has held that a plaintiff who claimed she was terminated because of her pregnancy could satisfy the fourth element simply by showing that her position was not eliminated. *See Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990) ("[I]n a case where an employee claims to have been discharged in violation of Title VII, she can make out the fourth element of her prima facie case without proving that her job was filled by a person not possessing the protected attribute. . . . [A] complainant can satisfy

---

[9]This position was recognized, but not applied, in *Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262, 1272 (10th Cir. 1988), a case involving disparate treatment claims by female employees.

the fourth prong of her prima case simply by showing that, as here, the employer had a continued need for someone to perform the same work after [the complainant] left." (citations and quotations omitted)). While *Cumpiano* presents a very narrow fact situation involving a pregnant employee and not a member of a racial minority, the language used by the First Circuit is broad. Additionally, the Second Circuit, in a failure-to-hire case, rejected a test requiring a plaintiff to show that someone outside the protected class was hired instead of plaintiff, and held that a plaintiff could establish the fourth element simply by showing that the employer continued to seek applicants after the plaintiff was rejected. *See Meiri v. Dacon*, 759 F.2d 989, 995-96 (2d Cir.1985) ("Furthermore, although certain courts -- including the district court in this action -- have required an employee, in making out a *prima facie* case, to demonstrate that she was replaced by a person outside the protected class, we believe such a standard is inappropriate and at odds with the policies underlying Title VII." (citations omitted)). Both of these cases relied on the basic standard originally articulated in *McDonnell Douglas* which only required a plaintiff to show that the employer continued to seek applicants.

The approach taken by the First and Second Circuits is superior to that followed in the other circuits that have addressed the issue. Although the latter circuits do not preclude a plaintiff from meeting the prima facie burden when the

replacement or new hire shares the protected attribute, some additional fact from which an inference of discrimination can arise must be shown. None of these courts give any examples of what evidence would be sufficient to give rise to such an inference. This results in too much uncertainty for the district courts and the parties. Additionally, the approach taken by the First and Second Circuits is in concert with Supreme Court precedent.

The Supreme Court has held that when a qualified employee, who is a member of a racial minority group that has traditionally suffered workplace discrimination, is not hired for a job in which a vacancy exists, the failure to hire alone is sufficient to raise the inference of discrimination. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (involving Title VII claims for failure to hire and failure to promote). In *Teamsters*, the Court stated,

> The *McDonnell Douglas* case involved an individual complainant seeking to prove one instance of unlawful discrimination. An employer's isolated decision to reject an applicant who belongs to a racial minority does not show that the rejection was racially based. Although the *McDonnell Douglas* formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. *Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.*

*Id*. (emphasis added).

The Court later expounded on the observation made in *Teamsters*: "[W]e are willing to presume [discrimination] largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Although both *Teamsters* and *Furnco* involved failure-to-hire claims, we see no reason why the Court's reasoning does not apply equally when the plaintiff is alleging wrongful termination. *See Crawford,* 713 F.2d at 588 ("[T]here is no reason to apply a stricter version of the fourth part of the McDonnell Douglas test in a suit alleging a discriminatory discharge rather than a discriminatory failure to hire or promote . . . .").

When viewed against a backdrop of historical workplace discrimination, an employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors. The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement.

The purpose behind the prima facie requirement established in *McDonnell Douglas* is to obligate a plaintiff to "eliminate[] the most common nondiscriminatory reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 253-54. An inference of discrimination is raised when an employer rejects an otherwise qualified minority employment candidate and thereafter does not eliminate the position for which the candidate was rejected. Evidence of the seeking or hiring of a replacement to fill the position vacated by a discharged plaintiff who is a member of a group which has historically suffered discriminatory treatment is, by itself, sufficient to satisfy the fourth element of the plaintiff's *McDonnell Douglas* prima facie case of racial discrimination.[10]

Supreme Court precedent fully supports this court's conclusion that the termination of a qualified minority employee raises the rebuttable inference of discrimination in every case in which the position is not eliminated. The test adopted herein requires a plaintiff to show more than the fact she was terminated to satisfy her prima facie burden; she must also show that she is a member of a protected class that has traditionally suffered workplace discrimination, she was qualified, and the job from which she was terminated was not eliminated. That

---

[10]The elimination of the position, however, does not necessarily eviscerate a plaintiff's claim that her discharge was racially motivated. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (emphasizing that the prima facie case is a flexible standard that may be modified to accommodate different factual situations).

employee, however, is not therefore entitled to go to trial.  The employer has the opportunity to dispel the inference by articulating a legitimate, non-discriminatory reason for terminating the employee.  In meritless cases, the plaintiff will be unable to show that the employer's articulated reason is pretextual, and summary judgment will then be entered for the defendant.  Thus, the approach taken by this court clarifies the issues for the parties and the lower courts and will not result in meritless claims making it past the summary judgment stage.

Accordingly, we hold that the district court erred as a matter of law when it held that Perry failed to make out her prima facie case of racial discrimination under section 1981 because she was replaced by an Hispanic woman.  Defendants do not dispute Perry's assertions that she is Hispanic and a protected person, was qualified to perform her job, and was terminated.  Further, it is undisputed that after her termination, a replacement was hired to fill Perry's position.  Accordingly, we hold that Perry, a member of a minority group which has historically suffered discriminatory treatment in the workplace, has made out the fourth element of her prima facie case by her introduction of evidence that the position from which she was terminated was filled after her termination.

Consequently, the district court erred when it dismissed on this ground Perry's racial discrimination claim arising under section 1981.[11]

### 3. Section 1981 Retaliation Claim

Perry argues that the district court erred in dismissing her section 1981 retaliation claim because the prima facie case for such a claim differs significantly from the prima facie case for racial discrimination and does not require her to demonstrate that her position was filled by someone who does not possess her protected attribute.[12] Perry argues that she has met her prima facie burden with respect to her retaliation claim and the district court erred when it held otherwise.

Contrary to Perry's understanding of the district court's memorandum order, that order is void of any reference to her section 1981 retaliation claim. Although the district court dismissed all of Perry's state and federal claims with

---

[11]Because the district court ruled that Perry had failed to present a prima facie case of racial discrimination, the court did not proceed to the next level of the *McDonnell Douglas* analysis and address whether Defendants had articulated a legitimate, nondiscriminatory reason for discharging Perry. In light of the lack of a ruling from the district court, we refrain from continuing the *McDonnell Douglas* analysis and leave that and any attendant issues to be addressed by the district court on remand and upon proper motion of the parties.

[12]In retaliation cases, a plaintiff establishes a prima facie case by showing that: (1) she engaged in protected opposition to discrimination; (2) she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998).

prejudice, the court did not specifically address the merits of any retaliation claim raised by Perry and specifically did not evaluate whether Perry had presented either direct or indirect evidence of retaliation. Therefore, the district court erred in dismissing Perry's section 1981 retaliation claim without analysis or discussion.[13]

B.    Claims Arising Under the New Mexico Human Rights Act

*1.    New Mexico Racial Discrimination Claim*

Addressing Perry's claim of racial discrimination brought pursuant to the New Mexico Human Rights Act, the district court held that Perry had failed to introduce either direct or indirect evidence of racial discrimination. The district court, therefore, dismissed Perry's New Mexico racial discrimination claim. In cases brought pursuant to the New Mexico Human Rights Act, a plaintiff must present direct evidence of discrimination or, alternatively, may choose to present

---

[13]This court can affirm the district court's decision to dismiss Perry's section 1981 retaliation claim for any reason supported by the record. *See* In re *Robinson*, 921 F.2d 252, 253 (10th Cir. 1990) ("An appellee may defend the judgment won below on any ground supported by the record without filing a cross appeal."). This court, however, will not craft a party's arguments for him. In their appellate brief, Defendants do not distinguish the prima facie elements in retaliation cases from those in racial discrimination cases. Because Defendants do not analyze the correct elements, they inevitably fail to advance any relevant argument that Perry has failed to meet her prima facie burden with respect to her retaliation claim. Because Defendants have not adequately developed the argument, we decline to address whether there is an alternative basis to affirm the district court's dismissal of Perry's section 1981 retaliation claim.

indirect evidence by utilizing the *McDonnell Douglas* burden-shifting framework. *See Martinez v. Yellow Freight Sys., Inc.*, 826 P.2d 962, 964-65 (N.M. 1992)

The New Mexico Supreme Court has held that discriminatory statements made directly to an employee by his employer can constitute direct evidence of discrimination. *See Smith v. FDC Corp.*, 787 P.2d 433, 438 (N.M. 1990) (holding the trial court did not err when it found that ageist statements made to discharged employee represented direct evidence of age discrimination). However, as previously discussed, the racist statements made by Woodward were not directed at Perry and did not purport to describe her. Accordingly, under New Mexico law, Woodward's statements do not constitute direct evidence of racial discrimination.

The New Mexico state courts have indicated a willingness to embrace tests developed in light of *McDonnell Douglas* and have repeatedly applied the *McDonnell Douglas* burden-shifting analysis in wrongful termination cases when there is an absence of direct evidence of discrimination. *See Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 954 P.2d 65, 70 (N.M. 1998); *Martinez*, 826 P.2d at 964-65; *Smith*, 787 P.2d at 437. Defendants repeat their argument that Perry must prove her replacement was not Hispanic before she is able to satisfy her prima facie burden under New Mexico law. *See Smith,* 787 P.2d at 437 (stating, in dicta, that a terminated employee can make out his prima facie case by

showing that his position was filled by someone who is not a member of his protected class but not thereafter applying this element of the test). In *Smith*, however, the New Mexico Supreme Court clarified that it does not intend to strictly adhere to the prima facie test articulated therein. "A prima facie case may also be made out through other means . . . . For example, a prima facie case can be shown absent a demonstration that the plaintiff was replaced by someone not in the protected class if he can show that he was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained." *Id*.; *see also Cates*, 954 P.2d at 69-70 (reiterating that the New Mexico courts have characterized the elements of the *McDonnell Douglas* test as "flexible enough to accommodate diverse cases").

There is no real indication that the New Mexico courts would require a plaintiff to satisfy a stricter prima facie burden and prove that she was replaced by an individual who did not possess her protected attribute. For the same reasons Perry has satisfied her prima facie burden with respect to her section 1981 racial discrimination claim, she has likewise satisfied her prima facie burden with respect to her New Mexico racial discrimination claim. Accordingly, the district court erred when it dismissed that claim.

## 2. *New Mexico Retaliation Claim*

In this appeal, both parties raise arguments relating to Perry's retaliation claim arising under the New Mexico Human Rights Act. Defendants' only relevant argument justifying the district court's dismissal of Perry's retaliation claim is that Perry is foreclosed from bringing the claim because she failed to raise it before the New Mexico Department of Labor. This issue was not raised in Defendants' motion for summary judgment and appears to be raised for the first time in Defendants' appellate brief. This court is free to "affirm for reasons other than those relied on by the district court, as long as those reasons find support in the record." *Swoboda v. Dubach*, 992 F.2d 286, 291 (10th Cir. 1993). There is, however, no record support for Defendants' contention that Perry did not include a claim of retaliation in the complaint she filed with the New Mexico Department of Labor.[14] Accordingly, we decline to affirm the district court's dismissal of Perry's New Mexico retaliation claim on the grounds advocated by Defendants.

---

[14]After filing a complaint with the New Mexico Department of Labor, Human Rights Division and receiving an adverse determination, Perry filed a complaint in New Mexico state court. Defendants later removed the case to the United States District Court for the District of New Mexico. Defendants claim that Perry attempted to amend her complaint before the New Mexico Human Rights Division to include a claim of retaliation but was not permitted to do so. Defendants, however, have provided no documentation to support this claim.

Our discussion of Perry's section 1981 retaliation claim is equally applicable to her New Mexico retaliation claim. Accordingly, the district court erred when it dismissed Perry's New Mexico retaliation claim.

IV.    CONCLUSION

In sum, we hold that an at-will employee under New Mexico law can maintain a cause of action for wrongful termination under 42 U.S.C. § 1981 and that, with respect to her racial discrimination claims, Perry has satisfied the fourth element of her *McDonnell Douglas* prima facie case. Accordingly, we **REVERSE** the district court's order granting summary judgment on Perry's section 1981 and New Mexico racial discrimination claims.[15] Additionally, because the district court dismissed Perry's retaliation claims without analysis or discussion, we **REVERSE** the district court's order granting summary judgment on Perry's section 1981 and New Mexico retaliation claims. The case is **REMANDED** for further proceedings consistent with this opinion.

**No. 98-2003**

DEFENDANTS' MOTION FOR ATTORNEYS FEES

---

[15]Perry's motion to certify to the New Mexico Supreme Court the issue of her *prima facie* burden under the New Mexico Human Rights Act is denied.

After the district court granted summary judgment in favor of Defendants in case No. 97-2343, Defendants filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988. The motion was denied by the district court and Defendants appealed. Because we find in favor of Perry in No. 97-2343, Defendants are no longer the prevailing parties, a requirement under the attorney's fees provisions of 42 U.S.C. § 1988. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). Defendants' cross-appeal, therefore, is moot and the district court's order denying Defendants' their attorney's fees is hereby **VACATED**.