**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ELOY TONY ARAGON
and RONALD ABEYTA,

      Plaintiffs-Appellants,

v.

KING SOOPERS, INC.,
a Kansas corporation,

      Defendant-Appellee.

No. 01-1001
(D.C. No. 99-D-343)
(D. Colo.)

---

**ORDER AND JUDGMENT** [*]

---

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Eloy Tony Aragon and Ronald Abeyta appeal the district court's order on their claims of national origin discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17, as well as various state claims against their former employer, the grocery enterprise King Soopers, Inc. The United States District Court for the District of Colorado entered summary judgment for King Soopers on the federal claims and dismissed the state claims without prejudice. We affirm.

**Facts**

Messrs. Aragon and Abeyta, both of Hispanic descent, worked together in King Soopers' General Merchandise Warehouse and both filed their initial charges with the Equal Employment Opportunity Commission (EEOC) soon after their employment in that warehouse was terminated in August of 1997. However, the facts supporting the claims for each appellant differ in many respects.

Mr. Aragon began working for King Soopers in October 1976, eventually reaching the level of Manager in the General Merchandise Warehouse in 1995. At that time his immediate supervisor was a Caucasian male named Ken Wilson, Director of Warehousing and Transportation and later Director of Logistics. Various statements in the record reveal that the working relationship between Mr. Aragon and Mr. Wilson was initially pleasant but had deteriorated somewhat over the course of a year. Also, at this time it was widely known by company

employees that King Soopers was planning to close its General Merchandise Warehouse in the near future. In the meantime, King Soopers was searching for a buyer for its entire warehouse and transportation operations.

In March of 1996, Mr. Aragon arranged a meeting with Don Gallegos, President of King Soopers, David Savage, Vice President of Retail Operations, and Mr. Wilson. At that meeting Mr. Aragon expressed his dissatisfaction in the "direction" of King Soopers' distribution and transportation operations. According to Mr. Aragon, this discontent, along with his recent divorce, led him to openly discuss quitting his job at the meeting. Mr. Savage and Mr. Gallegos urged Aragon not to quit, and instead to take time off to explore other options, including transfer to his previous job in frozen foods, transfer to an assistant manager job in a retail store or a severance package once the warehouse was closed. After taking a week off, Mr. Aragon returned to work and told Mr. Wilson that he wished to transfer to a retail operation as an assistant manager upon the closure of the General Merchandise Warehouse.

Throughout much of the next year, Mr. Aragon claims to have had several discussions with Mr. Wilson about his decision to transfer; however, the record does not reveal the details of those discussions. Mr. Aragon also asserts that, from the time he was given the option to transfer, he was never told that he was

required to do anything to effectuate the transfer other than to inform Mr. Wilson of his decision.

In March of 1997, Mr. Wilson approached Mr. Aragon and advised him to prepare to transfer to the retail division and to leave one of his supervisors behind to eventually close the General Merchandise Warehouse. At that time, Mr. Aragon declined the transfer,[1] asking instead to stay where he was in order to tend to his ex-wife's health problems.

Mr. Abeyta started working for King Soopers in 1980. In 1995, he worked in the Grocery Service Center with Mr. Wilson as his second-level manager. That year he was transferred to the General Merchandise Warehouse where he was immediately supervised by Mr. Aragon, but still ultimately by Mr. Wilson. According to Mr. Abeyta's deposition, he had two discussions with Mr. Wilson concerning an offer of a transfer or severance package. In either 1995 or 1996,[2] Mr. Wilson offered Mr. Abeyta the option of a severance package or a transfer to another warehouse. Mr. Abeyta "said he would think about it" but never

_____

[1]    Mr. Aragon disputes that he actually declined the transfer, arguing that he merely asked that it be deferred for a short period of time in order to deal with personal problems. Nevertheless, though argued in the context of Title VII and § 1981, the record makes clear that this distinction is relevant, if at all, only to Mr. Aragon's state law claims as it is not tied to any evidence of unlawful discrimination.

[2]    As noted by the district court, there is confusion in the record as to the actual date of the first discussion due to contradictions between Mr. Abeyta's affidavit and deposition.

responded to the offer, later reasoning that he "figured [he] would just stay where [he] was at." Aplt. App., Vol. I at 245. The second offer for a severance came four to six months before the sale of King Soopers' entire warehouse and transportation operations. Mr. Abeyta said that he didn't know whether or not he was interested in a severance package at that time and did not follow up on the offer with Mr. Wilson. Upon hearing of the impending sale, however, Mr. Abeyta confirmed with Mr. Gallegos and a manager employed by the buyer that he would receive some severance package.

On April 7, 1997, King Soopers sold its warehouse and transportation operations to Compass Logistics. The agreement called for the termination of nearly all 700 individuals employed in those operations by King Soopers and their immediate rehire by Compass. Therefore, as of April 7, Mr. Aragon and Mr. Abeyta were employed by Compass Logistics. King Soopers retained Mr. Wilson and Ms. Bernice Greaser to oversee the transition and monitor relations with Compass Logistics. Sometime after the sale date to Compass, Mr. Aragon called Mr. Wilson and asked when he could transfer to a retail store. [3] Mr. Wilson informed Mr. Aragon at that time that he could no

---

[3]     Mr. Aragon disputes the timing of this discussion, alleging that he contacted Mr. Wilson before the sale to Compass. However, this allegation is unsupported by the record that instead verifies the district court's finding that Mr. Aragon was no longer an employee of King Soopers when he contacted

longer transfer to the retail division and that "the whole deal was off."
*Id.* at 74-75.

After the sale, Compass Logistics proceeded with the plan of closing the General Merchandise Warehouse. Mr. Aragon and Mr. Abeyta received severance packages in which they waived all claims against Compass, and the warehouse was ultimately closed in September of 1997. Mr. Aragon re-applied for employment with King Soopers on November 7, 1997, but his application contained an admission of a felony drug conviction in 1973. Due to this admission, and its implication that Mr. Aragon had falsified his initial application for employment for King Soopers in 1976, the application was denied.

After their severance, Mr. Aragon and Mr. Abeyta filed charges with the EEOC alleging national origin discrimination. Mr. Aragon later amended his complaint to include a claim for retaliation after he was refused consideration for a new job by King Soopers. [4] After exhausting their administrative remedies and

---

[3](...continued)
Mr. Wilson.

[4]     As noted by the district court, during the course of these proceedings Mr. Abeyta raised an additional claim of retaliation against King Soopers based on facts surrounding his transfer to the General Merchandise Warehouse in 1995. While the district court discussed the substance of this claim, it alternately found that Mr. Abeyta had never filed a retaliation charge with the EEOC, thus precluding an argument on this basis in the district court, and that he had, additionally, expressly waived any cognizable claim of retaliation during the discovery phase of the case. After reviewing the record, we agree with the

(continued...)

receiving right-to-sue letters, they brought suit in federal district court with claims against King Soopers for denial of their rights to equal employment opportunity under 42 U.S.C. § 1981 and Title VII.  Both also brought claims for breach of contract, promissory estoppel, breach of an express covenant of good faith and fair dealing and outrageous conduct.  The district court granted summary judgment for King Soopers on all claims based upon § 1981 and Title VII and dismissed the remaining claims without prejudice, declining to exercise supplemental jurisdiction.  We exercise jurisdiction based upon 28 U.S.C. § 1291.

## Standard of Review

"We review the grant of summary judgment de novo, applying the same standard as did the district court."  *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).  Accordingly, "this court examines the record to determine whether any genuine issue of material fact is in dispute.  We construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000).  If no material issues of fact are in dispute we determine whether the district court correctly applied the substantive law, which

---

[4](...continued)
district court that any claim Mr. Abeyta may have had for retaliatory conduct based upon his transfer in 1995 was expressly waived, and we further note that he has dropped that particular argument on appeal to this court.

we review *de novo* . *See Jones v. Kodak Med. Assistance Plan* , 169 F.3d 1287, 1290-91 (10th Cir. 1999). Summary judgment is appropriate against any party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett* , 477 U.S. 317, 322 (1986).

## Mr. Abeyta's Discrimination Claim

Plaintiffs alleging discrimination in violation of either Title VII or § 1981 may prove intentional discrimination through direct evidence (which, we have noted, can be rare, *see Ingels v. Thiokol Corp.* , 42 F.3d 616, 620-21 (10th Cir. 1994)), or through indirect evidence by using the familiar test in *McDonnell Douglas Corp. v. Green* , 411 U.S. 792, 802-04 (1973). In either instance, the plaintiff has the burden to present that evidence in his prima facie case to show, *inter alia,* that an "adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp . Servs., Inc.* , 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine* , 450 U.S. 248, 253 (1981)). Mr. Abeyta bases his allegation of discrimination on his 1995 transfer from the Grocery Service Center to the General Merchandise Warehouse and claims that his prima facie case is thus met by "Mr. Wilson's unjustified action of banning [me] in July of 1995 from any future assignments to the Grocery Service Center," which he labels

a "discriminatory transfer." Aplt. Corrected Opening Br. at 39. However, as noted by the district court, the evidence Mr. Abeyta provides of circumstances which presumably gave rise to an inference of unlawful discrimination surrounding this transfer consists solely of his unverified speculation that Mr. Wilson was prejudiced against Hispanics. While we have said the requirements to meet the burden at the prima facie stage in these disputes are "not onerous," *see EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1197 (10th Cir. 2000), after thoroughly reviewing the record we agree with the district court's finding that Mr. Abeyta has failed to make a showing sufficient to establish his initial burden against King Soopers. Therefore, we conclude that summary judgment was proper in this case for substantially the same reasons as those articulated by the district court in its order of December 8, 2000.

## Mr. Aragon's Discrimination Claims

Much of Mr. Aragon's argument on appeal goes to facts surrounding whether he had met his initial burden of establishing a prima facie case of discrimination and retaliation. For purposes of King Soopers' summary judgment motion, however, the district court presumed Mr. Aragon had met this burden as to each claim and subsequently moved ahead with analysis following the

*McDonnell Douglas* framework of allocating burdens.[5] Under *McDonnell Douglas*, after a prima facie case is established by the plaintiff, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Perry*, 199 F.3d at 1135. If the defendant is able to articulate a valid reason, the plaintiff can avoid summary judgment "only if [he] is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." *Id.*

In determining whether a particular defendant has met its burden of coming forward with facially legitimate, nondiscriminatory reasons for the employment actions, we have said:

> [t]he defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear.

*EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations and footnote omitted).

---

[5] While the elements required to establish a prima facie case of retaliation differ slightly from those of a claim of disparate treatment under Title VII, the analytical framework of *McDonnell Douglas* guides our review of both. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (employing that framework in retaliation claim).

Mr. Aragon claims that King Soopers' failure to transfer or promote him prior to the sale of the warehouse operations to Compass was discriminatory and that the refusal to rehire him was in retaliation for his engaging in a protected activity. However, King Soopers has produced a great deal of evidence for the record articulating its reason for not transferring Mr. Aragon, including, notably, Mr. Aragon's own decision not to transfer when he was given that opportunity. Similarly, King Soopers has explained through depositions that its reason for not rehiring Mr. Aragon was due to his prior drug conviction and falsified application. This proof is sufficient to satisfy King Soopers' required burden at this stage and the district court was correct in finding that it was met.

Given facially legitimate reasons for the employment actions, Mr. Aragon is required to show that the proffered reasons are, in fact, untrue. To establish pretext, a plaintiff must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. A particular plaintiff could accomplish this by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation and citation omitted). However, "mere conjecture that [the] employer's

explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

While pretext may be demonstrated in a variety of ways, *see Kendrick*, 220 F.3d at 1230, we agree with the district court that Mr. Aragon did not establish it here. Mr. Aragon has not produced any evidence showing King Soopers' proffered nondiscriminatory version of events leading up to the sale to Compass to be false. Further, he has offered no relevant evidence that other similarly situated employees were treated more favorably. Finally, his arguments regarding retaliation are not based upon any objective evidence, but rather on his own conjecture which the district court found to be contradictory, self serving and largely inadmissable. After a full reading of this record, we agree with the district court that Mr. Aragon has not shown that a discriminatory reason more likely motivated King Soopers or that its proffered explanation of events was in any way unworthy of credence. Having thus failed to make a showing sufficient to establish this essential element of his federal claims, we hold that summary judgment against Mr. Aragon was appropriate.

## State Law Claims

After granting summary judgment against Mr. Aragon and Mr. Abeyta on the federal claims over which the district court had original jurisdiction, the

court declined to exercise supplemental jurisdiction over the various state law claims made against King Soopers and dismissed those claims without prejudice. Section 1367 of Title 28 of the United States Code expressly grants the district court the discretion to do this, and it was entirely proper in this case. *See Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001).

Accordingly, the judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Chief Judge