**Joseph TORRENCE, Plaintiff,**

v.

**CHERRY CREEK SCHOOL DIST. NO. 5, Defendant.**

**Civil Action No. 99-K-1326.**

United States District Court, D. Colorado.

Oct. 5, 2000.

Rhonda L. Rhodes, Williams & Rhodes, Englewood, CO, for plaintiff.

Richard J. Banta, Banta, Hoyt, Everall & Farrington, LLC Denver, CO, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

This race-based employment discrimination case is before me on the Motion of Defendant Cherry Creek School District No. 5 (the " District") for Summary Judgment. Plaintiff Joseph Torrence claims he was terminated from his position as Day Custodian at the District's Grandview High School on the basis of race in violation of 42 U.S.C. § 1981 and his state law-inferred contractual employment rights. Torrence also claims the decision to terminate him was made in retaliation for unspecified complaints he says he made that he was being singled out for disciplinary action on the basis of his race.

The District contends Torrence was fired by his supervisor, Michael Anderson, for a pattern of unacceptable behavior and poor performance that had been documented by coworkers, together with his "poor response" to questions Anderson asked about these complaints at the October 19, 1998 meeting after which the decision to fire him was made. The documented complaints involved three incidents: (1) an incident where Torrence cut in line at the school snack bar and was rude to a kitchen staff member; (2) an incident where Torrence failed to obey instructions to avoid setting off a fire alarm for the second time in a given day; and (3) an incident involving an inappropriately angry exchange of words with a District vendor driver. *See* Anderson Affid., ¶ 7 and attached coworker letters/memoranda of complaint (Def.'s Mem. Br. in Supp. of Mot. Summ. J., Ex. H). Anderson called Torrence into a meeting on the morning of October 19, 1998, and, at the conclusion of that meeting, told Torrence his employment was being terminated.

At the time Torrence was terminated, it appears there had been, in addition to the performance-related complaints documented by coworkers, at least one additional complaint from a Grandview employee that Torrence had sexually harassed her. Torrence was never told of those allegations, and contends they were the "real" reason he was fired. (Pl.'s Resp. Mot. Summ. J. at p. 7.) Anderson denies the sexual harassment allegations played any part in his decision to recommend Torrence's termination. (Anderson Affid. at ¶ 11.) In fact, Anderson states, he only "bec[a]me aware" of them "[a]fter [the] meeting with Mr. Torrence of October 19, 1999[sic]." *Id.* Because both sides agree the salient issue for the purposes of the instant summary judgment motions is whether Torrence has come forward with sufficient evidence to establish that the District's proferred reasons for firing him were pretexts for invidious discrimination, my focus is limited to that issue.

## I. *Legal Standard.*

The Tenth Circuit's recent explication in *Kendrick v. Penske*, 220 F.3d 1220 (10th Cir.2000) of the McDonnell Douglas standard for considering motions for summary judgment in the employment discrimination context provides the legal framework applicable to the District's Motion. Because Plaintiff relies on circumstantial evidence to support his claims and has successfully stated a prima facie case under the standard articulated in *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir.1999), the sole issue to be considered in the instant Motion is that of pretext, i.e., whether Plaintiff, as the nonmovant under a Fed.R.Civ.P. 56 standard, has come forward with sufficient evidence to show that the District's proffered reason for terminating his employment is "'unworthy of belief.'" *Kendrick* at 1228–29 (adopting the *Perry* standard amid various differing standards as the most appropriate for determining whether plaintiff has stated prima facie case) and 1230 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995) to articulate standard for establishing pretext in context of summary judgment motion). On the issue of pretext, the Court in *Kendrick* explained that

[a] plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false [citation omitted]; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances [citation omitted]; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff. [Footnote omitted.] A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable serious-

ness. *See Aramburu [v. The Boeing Co.]*, 112 F.3d 1398, 1404 (10th Cir.1997). *Id.*, 220 F.3d at 1230.

Torrence's evidence of pretext falls into a hybrid category between (1) and (3). Torrence offers the deposition testimony of Grandview Associate Principal Dr. Harry Bull that Anderson was, in fact, aware of the sexual harassment allegations when he met with Torrence on October 19, and that, in fact, they had discussed the matter the Friday before, while Torrence was out on leave. Further, and because District policy requires that sexual harassment allegations be investigated and the alleged harasser given certain procedural protections before being fired for such conduct, Torrence asserts Anderson acted contrary to District policy when he fired him and did so in order to avoid having to afford him those procedural protections.

## II. *Discussion.*

Contrary to Anderson's assertions that he only learned of the sexual harassment allegations *after* terminating Torrence, Dr. Bull, who identified himself as the "Compliance Officer" at Grandview, testified in his deposition that he received a sexual harassment complaint regarding Torrence the Friday before Torrence was due to return from bereavement leave; and immediately called Anderson and reported the complaint to him. Bull Dep. Tr. at 49:2075—2077. Bull, moreover, not only told Anderson of the complaint, but testified that, after discussing with Anderson both the harassment allegations and the performance complaints Anderson was reviewing at the time, agreed Anderson would set up the October 19th meeting so they could "talk with Joe about the alleged behaviors." *Id.* at 49:2077–80, 2102–05. At the time, Bull testified, there was no discussion of firing Torrence and, in fact, it was his "hope ... that we would get Joe back on track." *Id.* at 50:2138. According to Bull, he considered the performance issues and the sexual harassment allegations to be "two very distinct things" and felt strongly that he "needed to be able to

follow-up on the sexual harassment piece." *Id.* at 2142–44.

Considering this evidence in the light most favorable to Torrence, it is clear Anderson's assertion that he learned of the sexual harassment allegations against Torrence only "after" the October 19th meeting is untrue. The question before me, however, is whether that falsehood, alone, establishes that the reasons given for Torrence's termination—i.e., a "pattern of unacceptable behavior" that did not include the sexual harassment allegations—were pretexts for racial discrimination. The issue is troubling because, on the one hand, Tenth Circuit jurisprudence states that a plaintiff may defeat a motion for summary judgment by demonstrating an employer's proffered reasons for his termination are not credible, *see Randle* at 451, but, on the other hand, that same jurisprudence depends on the conclusion that the pretext shown creates an inference of invidious (here, race-based) discrimination. In sum, does the fact that Anderson lied (considering the facts presented under a Rule 56 standard) about when he learned of the sexual harassment allegations create an inference that Torrence was fired based on those allegations alone and not for the stated reason of a documented "pattern of unacceptable behavior and poor performance?" And, even if they did, would the fact that the "real" reason Anderson fired Torrence was because of a coworker's sexual harassment allegations create an inference that Torrence was fired because of his race?

Torrence asserts Anderson's stated reason for firing him—the "pattern" of unacceptable behavior and poor performance—was pretextual and a sham for firing him on the basis of uninvestigated sexual harassment allegations of which he received no notice. Torrence's theory, as I understand it, is that the District wanted him out without having to investigate the allegations or to afford him the procedural protections to which he would have been entitled had the stated grounds for his termination been those allegations. This pretext—and here is where the stumbling block occurs—in turn, is offered as a fact that creates an inference, for summary judgment purposes, that Torrence was fired not for his behavior or performance, but "because he is Black." I simply do not know how one can reasonably move from the established fact to the requested inference.

At trial, the sequential analytical model adopted from *McDonnell Douglas* drops out and the jury will be left with the "single overarching issue" of whether Torrence has adduced sufficient evidence to warrant a finding that he was terminated "because of" his race. *See Kendrick,* 220 F.3d at 1226 (quoting *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 744 (10th Cir. 1991)). Torrence, however, has adduced no evidence, other than the fact that Anderson lied about not knowing about the sexual harassment allegations at the time he fired him for "a pattern of unacceptable behavior and poor performance," to warrant a finding that his race played any role in the District's decision to fire him. Such evidence, I conclude, is not what the Supreme Court or the Tenth Circuit contemplated in *McDonnell Douglas* and its progeny as entitling plaintiff to proceed to trial in a summary judgment context upon a showing of pretext. Clearly the pretext shown must give rise to an inference of the discriminatory animus upon which the plaintiff's claim depends, and not merely to an inference that some additional, or other, nondiscriminatory reason motivated the adverse employment decision at issue.

### III. *Conclusion.*

Dr. Bull's deposition testimony casts doubt on the credibility of Anderson's statement that he did not know about the harassment allegations at the time he decided to terminate Torrence. This, however, is not enough, under *Randle* and related cases to establish that Anderson's *stated* reasons (a documented pattern of poor behavior and performance) is not worthy of credence. It may well be that Anderson did not want to go through the procedural protections provided for sexual

harassment complaints because there were more than ample legitimate grounds for terminating Torrence. Preference of existing grounds is not the equivalent of pretextual grounds.

There is nothing before me which suggests that the stated grounds for Torrence's termination are either fake or that other similarly situated employees who violated work rules of comparable seriousness were treated differently. Moreover, there is no evidence that Anderson acted contrary to any written or unwritten district policy in terminating Torrence for the reasons stated by the District. And while it is unfortunate that Anderson may have been less than forthright about his knowledge of the sexual harassment allegations reported to him by Dr. Bull, that lack of forthrightness, even viewed in the light most favorable to Torrence, at most establishes that Anderson made a fielder's choice in deciding to terminate Torrence for the otherwise documented, legitimate reasons proffered. That choice is not a violation of 42 U.S.C. § § 1981 or Title VII.

Because I see little point in proceeding to trial in a § 1981 employment discrimination case in the absence of any evidence from which a jury could infer the "overarching" fact that plaintiff was terminated "because of" his race, I ORDER that the District's Motion for Summary Judgment is GRANTED as to Plaintiff's § 1981 claim that he was fired on the basis of race. In addition, and because Torrence has come forward with no evidence to show that he was engaged in protected activity at the time he was fired let alone that he was fired in retaliation for such activity, the District's Motion for Summary Judgment is GRANTED as to Plaintiff's § 1981 retaliation claim as well.

Finally, I note that Plaintiff's Third and Fourth claims for relief are based on state law and my authority over them a matter of supplemental jurisdiction under 28 U.S.C. § 1367. Having granted summary judgment on the claims over which I have original jurisdiction, and seeing no reason to retain jurisdiction over what are uniquely state law claims involving factual and legal issues categorically different from those involved in Plaintiff's federal claims, I find there are compelling reasons for declining to exercise supplemental jurisdiction over Plaintiff's state law claims for relief. Accordingly, IT IS ALSO ORDERED that Plaintiff's Third and Fourth claims for relief are DISMISSED without prejudice.

Given the nature of this case and the rulings herein, IT IS FURTHER ORDERED that the parties shall bear their own costs.