**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**January 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LACIE NELSON,

     Petitioner - Appellant,

v.

DEAN WILLIAMS, Executive Director,
Colorado Department of Corrections;
PHIL WEISER, Attorney General, State
of Colorado,

     Respondents - Appellees.

No. 22-1085
(D.C. No. 1:20-CV-00757-CMA)
(D. Colo.)

_____

### ORDER AND JUDGMENT*

_____

Before **MORITZ**, **BALDOCK**, and **KELLY**, Circuit Judges.

_____

In 2009, a Colorado jury convicted Lacie Nelson of eight counts of sexual

assault on a child. After unsuccessfully appealing her conviction and the denial of

her state-court post-conviction motion, Ms. Nelson sought habeas relief under

28 U.S.C. § 2254. She argued (among other things) that (1) defense counsel provided

ineffective assistance in violation of her Sixth Amendment rights by failing to

---

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

investigate and present evidence that the victims' older brother had been accused of sexually assaulting a child, and (2) the trial court admitted expert testimony allegedly vouching for the victims' credibility in violation of her Fourteenth Amendment right to due process. Applying the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the district court denied habeas relief. This court granted Ms. Nelson a certificate of appealability (COA) on these two claims. Because Ms. Nelson fails to demonstrate that the state court's adjudication of her claims involved an unreasonable application of federal law or rested on an unreasonable determination of the facts, we affirm the district court's judgment.

## I.     Background

For short periods in 2002 and 2003, Ms. Nelson and her husband, Roy Nelson, lived with the Gonser family, which consisted of Shannon Gonser (who is Roy's sister), Shannon's husband, Lee Gonser, their three sons—C.G., D.G., and Dn.G.— and their daughter. All of the Gonser children were under the age of 13 at that time. After Roy and Ms. Nelson moved out of the Gonsers' home, Shannon and Lee separated and they eventually divorced.

Lee and the four children moved in with his sister, Diana. When Diana overheard C.G. and D.G. talking about sexual abuse, she questioned them and then reported her conversations to Lee. Lee notified the police. Ann Smith, a forensic interviewer, interviewed D.G. in February and March 2004 and Dn.G. in March 2004. D.G. reported to Ms. Smith that his mother, Shannon, had verbally, physically, and

2

sexually abused him.  Dn.G. reported that Shannon had verbally and physically abused him.

About a year later, in early 2005, D.G. reported sexual abuse involving Shannon, Roy, and Ms. Nelson to both Lee and his psychologist.  The police did not investigate allegations against Roy and Ms. Nelson until 2006.  Ms. Smith re-interviewed D.G. in April 2006 and Dn.G. in December 2006.  Both D.G. and Dn.G. reported sexual abuse by Roy and Ms. Nelson to Ms. Smith.

C.G., D.G., and Dn.G. testified at Ms. Nelson's trial and were subject to cross examination by defense counsel.  The jury also viewed D.G.'s and Dn.G.'s videotaped interviews with Ms. Smith.  The prosecution endorsed Ms. Smith as an expert regarding forensic interviewing of children and adolescents.  As relevant to this appeal, she testified that during forensic interviews, she looks for signs that a child has been suggested or coached.  She described coaching as "the overt purposeful intent to get a child to say something that may not be true."  R., Vol. 2 (Trial Tr. Jan. 9, 2009) at 13.  And she stated that "[s]uggestibility is when you introduce an idea into a child either consciously or unconsciously about an event, and they adopt that event to be the truth."  *Id.*  Ms. Smith then testified that during her interviews with D.G. and Dn.G. she did not see any behaviors or statements by them that were consistent with a child who has been coached or suggested.  *See id.* at 15-16.  Ms. Nelson did not object to this testimony during the trial.[1]

---

[1] We note that Ms. Nelson presented her own expert witness in clinical and

(continued)

In closing argument, the prosecution contended that the crux of the case was whether the jurors believed D.G. and Dn.G.  The defense argued the victims' false allegations of abuse by Ms. Nelson were part of a quest by Lee and his sister, Diana, to "tak[e] down Shannon Gonser and possibly her family," *id.* (Trial Tr. Jan. 12, 2009) at 69, and also stemmed from the "vast pornography viewed in the home," *id.* at 34, as well as the boys' conversations with each other about abuse.  Defense counsel also contended the victims' allegations were implausible, pointing to, among other things, their delayed disclosure about abuse by Ms. Nelson, inconsistencies in their accounts, and the incredible nature of the abuse they alleged.  In rebuttal, the prosecutor stated, "Suggestibility and coaching . . . ., that's really what this case is about."  *Id.* at 72.  The prosecutor argued that the victims' testimony, demeanor, and emotion were not coached or suggested, reminding the jurors of Ms. Smith's testimony that she observed no signs of coaching or suggestion during her interviews with D.G. and Dn.G.

In her direct appeal, Ms. Nelson argued (among other things) that Ms. Smith improperly vouched for the victims' credibility, in violation of her Fourteenth Amendment right to due process.  The Colorado Court of Appeals (CCA) rejected this contention and affirmed her conviction.

---

forensic psychology who testified about the concepts of confabulation, cognitive distortion and dissonance, and false memories.  Ms. Nelson's expert further testified that Dn.G.'s statements recorded by Diana in early 2008 were possibly coached.  *See* R., Vol. 2 (Trial Tr. Jan. 9, 2009) at 77-79.

Shannon was also prosecuted on child sexual assault and other charges. In her second trial,[2] the jury acquitted Shannon of all remaining charges.

After Ms. Nelson's unsuccessful appeal and Shannon's acquittal, Ms. Nelson filed a post-conviction motion in the trial court. As relevant to this appeal, she argued her trial counsel was ineffective in failing to investigate and present evidence that C.G.—D.G.'s and Dn.G.'s older brother—had been accused of sexually assaulting a neighbor's child and was being prosecuted for that offense at the time he accused Shannon of sexual abuse. The trial court held Ms. Nelson failed to demonstrate either ineffective assistance or prejudice. The CCA affirmed, holding only that Ms. Nelson failed to demonstrate prejudice.

## II.    Discussion

We review de novo the district court's decision denying habeas relief. *Smith v. Duckworth*, 824 F.3d 1233, 1241-42 (10th Cir. 2016). But because the CCA rejected Ms. Nelson's claims on the merits, we apply AEDPA's highly deferential standard of review. *See* 28 U.S.C. § 2254(d). Under this standard, Ms. Nelson must show that the CCA's adjudications of her claims were (1) "contrary to, or involved an unreasonable application of, clearly established [f]ederal law" and/or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding." § 2254(d)(1)-(2).

---

[2] The CCA reversed Shannon's convictions from her first trial on an evidentiary error.

A.      **Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), to establish prejudice based on the ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

In her post-conviction motion, Ms. Nelson argued that, because evidence regarding the sexual-assault allegation against C.G. was introduced at Shannon's second trial and Shannon was acquitted, such evidence would necessarily result in Ms. Nelson's acquittal as well.  The CCA rejected this assertion as speculative. Ms. Nelson also argued that "the evidence was absolutely crucial to establish a motive for the children to fabricate allegations of sexual assault against Ms. Nelson and to show that C.G. had knowledge of the ramifications of being accused of such a crime."  R., Vol. 1 at 289 (brackets and internal quotation marks omitted).  But the CCA stated that Ms. Nelson did not explain and it was "unable to discern any logical connection between the unadmitted evidence" and C.G.'s suggested motive to fabricate allegations against his aunt, Ms. Nelson.  *Id.* at 290.  The court also noted that all of the Gonser children would have been aware of the ramifications of allegations of sexual assault by the time of Ms. Nelson's trial.  And it concluded that, "[t]o the extent the evidence had any probative value, it was merely cumulative of other (more plausible) impeachment evidence."  *Id.*  Applying *Strickland*, the CCA

"conclude[d] that Ms. Nelson failed to demonstrate a reasonable probability that the introduction of this evidence would have led to a different result." *Id.* at 291.

Ms. Nelson argues the CCA unreasonably applied the *Strickland* prejudice standard. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks omitted). This standard is intended to be difficult to meet. *Id.* at 102. And because the *Strickland* standard is both general and highly deferential, establishing an unreasonable application of it under § 2254(d)(1) "is all the more difficult." *Id.* at 105.

In ruling on Ms. Nelson's habeas application, the district court acknowledged the prosecution's case hinged on the victims' credibility. But the court concluded that the evidence of C.G.'s prosecution for sexual assault at about the same time he accused Shannon of sexual assault, but a full year before D.G. first accused Ms. Nelson of sexual assault, "does not squarely undermine the credibility of the victims' allegations against Ms. Nelson." R., Vol. 1 at 794 (internal quotation marks omitted). It reasoned that D.G.'s and Dn.G.'s alleged bias and motive to fabricate sexual abuse allegations against Ms. Nelson based upon C.G.'s sexual assault prosecution "is less logical and more attenuated than the motive and bias that was presented to and rejected by the jurors—i.e., the ongoing animosity against Shannon

7

and members of her family stemming from the divorce and custody battle." *Id.* at 795. The district court therefore held that Ms. Nelson failed to show under § 2254(d)(1) that the CCA unreasonably applied *Strickland*'s prejudice standard and denied her relief.

Ms. Nelson argues the CCA's no-prejudice determination is an unreasonable application of *Strickland* because the evidence supporting the jury's verdict consisted of the uncorroborated testimony of the two victims, which was weakened by their delayed disclosures, the inconsistencies and increasing specificity in their descriptions of the abuse over time, and the fantastical nature of their assertions regarding the abuse. But we agree with the district court that fair-minded jurists could disagree whether the CCA correctly applied *Strickland*'s general and highly deferential prejudice standard. Thus, Ms. Nelson has not satisfied the high bar of § 2254(d)(1) by showing that the CCA unreasonably applied clearly established federal law. We affirm the district court's denial of relief on Ms. Nelson's ineffective-assistance claim.

**B.** **Admission of Alleged Vouching Testimony**

Because Ms. Nelson failed to object to Ms. Smith's testimony as improperly vouching for the victims' credibility, the CCA reviewed her due-process claim for plain error. It concluded as follows:

> [Ms.] Nelson does not claim that any of the prosecution's expert witnesses stated that any of the victims were telling the truth on a specific occasion. Instead, [she] objects to testimony about the experts' interviewing techniques, experiences, and observations of child victims of sexual abuse generally and of the victims in this case specifically. [She]

8

contends the experts' testimony made the jury more likely to view the victims' inconsistencies as a natural part of the process of truthful disclosure.

However, testimony is not inadmissible simply because it supports the prosecution's position.

Here, [Ms.] Smith testified about the disclosure process for victims of child sexual abuse, including their level of susceptibility to suggestion, frequent barriers to disclosure, and reasons for delaying disclosure. [Ms.] Smith testified about her interviews during therapy sessions with the victims in this case in the context of patterns and behaviors typical of victims of child sexual abuse, but she did not offer her opinion on their credibility. [Ms.] Smith's testimony did not rise to the level of plain error.

R., Vol. 1 at 181-82 (citations, brackets, and internal quotation marks omitted).

Ms. Nelson contends that the CCA made an unreasonable factual determination under § 2254(d)(2) in finding that Ms. Smith did not offer an opinion on the victims' credibility. This court cannot "conclude a state court's factual findings are unreasonable merely because [it] would have reached a different conclusion in the first instance." *Johnson v. Martin*, 3 F.4th 1210, 1218 (10th Cir. 2021) (internal quotation marks omitted). Rather, a factual determination is unreasonable when the state "court plainly and materially misstated the record" or when "reasonable minds could not disagree that the finding was in error." *Smith v. Sharp*, 935 F.3d 1064, 1072 (10th Cir. 2019) (internal quotation marks omitted). Moreover, the CCA's factual determinations are subject to a rebuttable presumption of correctness under § 2254(e)(1) that can only be overcome by clear and convincing

evidence.[3]  The district court held that the CCA's finding that Ms. Smith did not offer her opinion on the victims' credibility was not an unreasonable interpretation of Ms. Smith's testimony.

Ms. Nelson does not argue that the CCA misstated the record.  She asserts that Ms. Smith's testimony "necessarily implied her belief that the boys were telling the truth" and that Ms. Smith "went well beyond [the] threshold line" into vouching for the victims' credibility "when she testified that D.G. and Dn.G. showed no signs of coaching or suggestibility."  Aplt. COA Appl./Opening Br. at 39, 40.[4]  But we conclude that Ms. Nelson fails to show that reasonable minds could not disagree on precisely where that line is and whether Ms. Smith's testimony crossed it.  Nor has she demonstrated by clear and convincing evidence that the CCA's conclusion is incorrect.

This court alternatively granted a COA on the issue whether the CCA's adjudication of Ms. Nelson's vouching claim resulted in a decision that involved an unreasonable application under § 2254(d)(1) of the due-process standard in *Lisenba v. California*, 314 U.S. 219, 236 (1941).  The Respondent argues that *Lisenba* is not clearly established federal law applicable to Ms. Nelson's claim.  "Whether the law is

---

[3] This court has observed that "[t]he Supreme Court has not yet defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)."  *Johnson*, 3 F.4th at 1218 n.4 (internal quotation marks omitted).  But Ms. Nelson does not contend that § 2254(e)(1) does not apply to the CCA's adjudication of her claim.

[4] Contrary to Ms. Nelson's assertion in her reply brief, the COA on her due-process claim is expressly limited to this testimony by Ms. Smith.

clearly established is *the* threshold question under § 2254(d)(1)." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). But based upon our holding that Ms. Nelson has not overcome the hurdle of § 2254(d)(2), we need not address whether clearly established federal law, as determined by the Supreme Court, applies to her claim challenging alleged vouching testimony. By failing to show that the CCA unreasonably determined there was no vouching testimony by Ms. Smith, Ms. Nelson has failed to establish a necessary prerequisite for a due-process claim based on improper vouching.

In any event, Respondent supports his contention by citing this court's decision in *Andrew v. White*, 62 F.4th 1299, 1312-13, 1315-16 (10th Cir. 2023), in which we held that *Lisenba* was not clearly established federal law for a claim that the admission of allegedly irrelevant bad-acts evidence deprived a defendant of due process. Ms. Nelson does not acknowledge *Andrew*, much less attempt to distinguish it. We will not craft an argument for her. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). We affirm the district court's denial of relief on Ms. Nelson's due-process claim.

## III. Conclusion

We affirm the district court's judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

11